THE STATE OF OHIO, APPELLEE, *v.* SNEED, APPELLANT.

[Cite as *State v. Sneed* (1992), 63 Ohio St.3d 3.]

(No. 89–1291—Submitted October 8, 1991—Decided February 12, 1992.)

4

*Robert D. Horowitz,* Prosecuting Attorney, *Kristen Lea Bates–Aylward* and *Ronald Mark Caldwell,* for appellee.

*Gutierrez & Mackey Co., John N. Mackey* and *Kathleen O. Tatarsky,* for appellant.

---

HOLMES, J. Appellant has raised thirty-two propositions of law. Each has been thoroughly reviewed and, for the reasons stated below, we find all to be without merit, and uphold appellant's convictions and death sentence.

## I

In his first proposition of law, appellant argues that the trial court should have suppressed a handgun obtained by a warrantless search of his apartment. The handgun, a .25 caliber Raven–Arms automatic, was discovered in appellant's apartment under the mattress of the bed he shared with Roxanne Goosby. Subsequent ballistic tests verified that this was the weapon used to kill Rowan.

The search was conducted on December 7, 1984 after appellant was arrested and taken into custody on the assault charge filed by Roxanne Goosby, appellant's girlfriend. Prior to the police leaving with appellant, parole officers questioned appellant about allegations that he possessed a gun, a violation of his parole. The parole officers also requested permission to search appellant's home at 1460 Water Court. Appellant voluntarily gave his permission and stated that "he had nothing to hide." The parole officers as well as one of the arresting officers attested to appellant's consent.

Goosby testified at the suppression hearing that she gave her written consent to search the subject premises to Munford when he met her at the hospital on December 6, 1984. Goosby related that although the lease was in appellant's name, she and appellant shared rental payments. In addition, the testimony of the landlady, Mary Alice Mosley, revealed that rental arrangements were made by both appellant and Goosby and they shared the apartment and rent payments as a couple.

While it is true that the parole officers conducted a warrantless search of the apartment located at 1460 Water Court, this does not mandate that we hold that the gun should have been suppressed as the fruit of an illegal search. *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. The United States Supreme Court has held that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject

only to a few specifically established and well-delineated exceptions." *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585. One such recognized exception is the proper consent to search the premises given voluntarily. *United States v. Matlock* (1974), 415 U.S. 164, 165–166, 94 S.Ct. 988, 990, 39 L.Ed.2d 242, 246. It is well settled that consent to a warrantless search will not be held invalid nor the resulting search unreasonable when one with authority over the premises voluntarily permits the search. See *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. This is equally true when authority over the premises is shared with another. See *United States v. Matlock, supra*, 415 U.S. at 171, 94 S.Ct. at 993, 39 L.Ed.2d at 249–250. " * * * [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."

This court had the opportunity to review a similar issue in *State v. Greer* (1988), 39 Ohio St.3d 236, 530 N.E.2d 382, certiorari denied (1989), 490 U.S. 1028, 109 S.Ct. 1766, 104 L.Ed.2d 201. At issue in *Greer* was the admission into evidence of certain items obtained by a warrantless search of appellant's residence. We found that since the appellant's girlfriend and co-resident voluntarily permitted the search, the appellant's constitutional rights were not infringed. Therefore, even if we were to hold that valid consent was not obtained from appellant by the police in the instant case, we would still uphold the legality of the search based upon the permission granted to search the premises by a co-resident of the apartment.

We find that the record clearly demonstrates that the prosecution met its burden of proving consent to search the premises and, therefore, based upon the evidence produced in the suppression hearing, we hold that the trial court was justified in overruling the motion to suppress.

## II

In his second proposition of law, appellant argues that the trial court deprived him of a fair trial by refusing to allow him to use the grand jury testimony of a state's witness to impeach that witness. This is not an issue concerning the trial court's refusal to disclose grand jury proceedings for defendant's counsel's inspection; the record clearly reflects that defendant was given an opportunity to review a transcript of the grand jury testimony of Roxanne Goosby prior to cross-examination. Rather, defendant's argument is essentially that the trial court erred in finding that Goosby's grand jury

testimony was not inconsistent with taped statements she gave at the police department.

We overrule defendant's proposition of law. Initially, we note that appellant did not preserve the grand jury testimony for the record. As a reviewing court, we cannot make any finding without having a full and complete review of the alleged inconsistent grand jury testimony. Because we find that the trial judge was in a position to evaluate firsthand the grand jury testimony and the transcript of the police statements, we hold that the record does not reveal an abuse of discretion on the part of the trial court in its denial of appellant's request to allow use of the grand jury testimony to cross-examine a state's witness.

## III

In his third proposition of law, appellant contends that the trial court committed reversible error by failing to give appellant's requested special instruction on accomplice credibility to the jury. That proposed instruction read:

"An alleged accomplice does not become incompetent as a witness merely because of participation with others in a criminal act or acts charged. However, the jury should keep in mind that the testimony of an alleged accomplice, if you decide he or she was an accomplice, should be closely examined, received with caution and weighed with great care because of his or her motivation to falsify." [1]

---

1. Although the court failed to give the appellant's requested instruction, it did give the following general charge:

"Credibility. You are the sole judges of the facts, the credibility of the witnesses, and the weight of the evidence. To weigh the evidence, you must consider the credibility of the witnesses. To do this, you will apply the tests of truthfulness which you apply in your daily lives.

"These tests include the appearance of each witness upon the stand, the witness's manner of testifying, the reasonableness of the testimony, the opportunity the witness had to see, to hear, and to know the things concerning which the witness testified, the witness's accuracy of memory, the witness's motivation, that is, what did a particular witness have to gain or lose by testifying as he or she did, the witness's frankness or lack of it, intelligence, interest and bias, if any, together with all the facts and circumstances surrounding the testimony.

"Applying these tests, you will assign to the testimony of each witness such weight as you deem proper.

"You are not required to believe the testimony of any witness simply because he or she was under oath. You may believe or disbelieve all or any part of the testimony of any witness. It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief."

The state acknowledges that the above-requested instruction was timely made by the appellant after closing argument. However, the record fails to disclose the trial court's reason for not including the proposed instruction in the general jury charge. Nevertheless, we agree with the trial court's decision because an instruction to the jury that the testimony of an accomplice is to be "received with caution" is an improper comment upon the evidence. See *State v. Flonnory* (1972), 31 Ohio St.2d 124, 60 O.O.2d 95, 285 N.E.2d 726, paragraph four of the syllabus.[2]

We have previously stated that "it is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge." *State v. Scott* (1986), 26 Ohio St.3d 92, 101, 26 OBR 79, 87, 497 N.E.2d 55, 63.

Moreover, the criminal defendant is entitled to have the trial court give complete and accurate jury instructions on all the issues raised by the evidence. *State v. Williford* (1990), 49 Ohio St.3d 247, 251, 551 N.E.2d 1279, 1283. However, it is not incumbent upon the trial court to give the defendant's requested instructions to the jury verbatim; the court may use its own language to communicate the same legal principles. *State v. Nelson* (1973), 36 Ohio St.2d 79, 65 O.O.2d 222, 303 N.E.2d 865, paragraph one of the syllabus; *State v. Hicks* (1989), 43 Ohio St.3d 72, 77, 538 N.E.2d 1030, 1037. See, also, *State v. Broom* (1988), 40 Ohio St.3d 277, 289, 533 N.E.2d 682, 696, where we upheld the trial judge's failure to give the defendant's proposed instruction because the substance of the instruction, regarding the credibility of witnesses, was included in the trial court's general charge to the jury.

In the case *sub judice*, appellant was indicted along with Brown for the aggravated murder of Rowan. Brown and the prosecution agreed, in a negotiated plea agreement, that Brown would testify against appellant in exchange for a dismissal of the death-penalty specification. In addition to Brown's testimony, the prosecution presented the testimony of Theotis Dillard who, while on the stand, corroborated Brown's version of the events that transpired immediately following the fatal shooting. Dillard was never charged with any crime for his participation in disposing of the victim's body. While both witnesses may have had a strong motive to fabricate, this alone does not render them incompetent to testify. Their credibility was in evidence and it was the jury's function in determining appellant's guilt beyond a reasonable doubt to determine how much weight to give to their testimony.

---

2. We note that the current version of R.C. 2923.03(D), as amended, effective September 17, 1986, is prospective and may not be applied to the jury charges given by the trial judge in the instant case. Cf. *State v. O'Dell* (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220 (analysis to be applied for prospective application of statute).

10

Our review of the entire case indicates that the appellant was permitted wide latitude in the cross-examination of the two witnesses at issue, and the entire plea agreement was presented to the jury. Therefore, we find that the trial court did not err in refusing to give the special instruction when the substance of the requested instruction was already included in the court's general charge. This proposition of law is without merit.

## IV

Appellant in his fourth proposition of law does not challenge the trial court's jury instruction with regard to accomplice liability, but instead challenges the verdict forms and the jury's findings pursuant to those forms. Specifically, appellant argues that the jury did not find appellant to be the principal offender in the aggravated murder of Rowan as required by R.C. 2929.04(A)(7) and, therefore, the death sentence should be vacated. Since this issue was neither raised nor briefed in the court of appeals, it has not been properly preserved for our review and any alleged error has been waived under principles of *res judicata*. *State v. Greer, supra*, 39 Ohio St.3d at 247, 530 N.E.2d at 396. Although the doctrine of waiver requires that we remove from our consideration those matters not offered for resolution in the courts below, we may invoke the plain error standard of analysis to *sua sponte* consider the particular errors affecting the accused's substantial rights. See Crim.R. 52(B); *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804; *State v. Broom, supra; State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899. We also note that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long*, at paragraph three of the syllabus. Although the instant proposition of law was not preserved for appeal, we feel compelled to *sua sponte* address this issue.

In order that the death penalty for the crime of aggravated murder, a violation of R.C. 2903.01(B), may be imposed, the state must prove beyond a reasonable doubt that the accused purposely caused the death of another and additionally that the accused was the principal offender in the commission of the aggravated murder, as mandated by R.C. 2929.04(A)(7). See *State v. Jenkins* (1984), 15 Ohio St.3d 164, 177, 15 OBR 311, 322–323, 473 N.E.2d 264, 280, fn. 17.[3] Appellant directs this court's attention to the disjunctive nature

3. Under Ohio law an accomplice to a crime is subject to that punishment which the principal could receive. R.C. 2923.03(F). Accordingly, an accomplice can be charged and convicted of aggravated murder under the felony-murder theory, pursuant to R.C. 2903.01(B). However,

of the verdict form and argues that it had the potential of creating an unanimous jury verdict with fewer than all the jurors actually finding him to be the "principal offender." [4] The contention is that appellant could have been convicted by less than a unanimous jury since some of the jurors could have found that he was the principal offender, others that he was the aider, others that he was the abettor, and still other jurors could have found him only to have been a conspirator in the crime. Assuming one of the jurors had failed to agree that appellant was the principal offender, appellant could still be convicted for aggravated murder under R.C. 2903.01(B) and 2923.03; however, appellant could not be subject to the death sentence pursuant to R.C. 2929.-04(A)(7).

We are not persuaded by appellant's argument. We observe that the jury found, on a separate verdict form, that the appellant "DID personally perform every act constituting the offense in this case of Aggravated Murder." Prior to the jurors' signing this verdict form, the trial judge defined the term "principal offender" in the jury instructions as "one who personally performs every act constituting the offense, in this case aggravated murder." Therefore, upon signing this separate verdict form each juror found that the state had met its burden of proving beyond a reasonable doubt that appellant was the principal offender in the aggravated murder. This renders any claimed ambiguity in the complained-of verdict form resolved. Accordingly, we hold that R.C. 2929.04(A)(7) was fully complied with because each individual juror's

---

the death specification under R.C. 2929.04(A)(7) is limited to a more narrow class of offenders. That specification applies only if:

"The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, *and either the offender was the principal offender in the commission of the aggravated murder* or, if not the principal offender, committed the aggravated murder with prior calculation and design." (Emphasis added.)

See *Zant v. Stephens* (1983), 462 U.S. 862, 876–877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235, 249–250: " * * * [To] protect * * * against the wanton and freakish imposition of the death penalty * * *, an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."

Therefore, by narrowing the class of offenders by the specification that they be the "principal offenders," R.C. 2929.04(A)(7) excludes accomplices from operation of the statute and therefore survives constitutional scrutiny.

4. The verdict form reads as follows:

"We the Jury further find the Defendant, DAVID ALLEN SNEED, GUILTY of the Aggravating Circumstances as set forth in the FIRST SPECIFICATION, THAT OF AGGRA-VATION, to wit: the commission of the offense of Aggravated Murder while committing or attempting to commit or while fleeing immediately after committing or attempting to commit Aggravated Robbery and he was the principal offender and/or aider and/or abettor, and/or conspirator with Chevette Denise Brown in the commission of Aggravated Murder."

signing a verdict form that found appellant personally performed every act constituting the offense of aggravated murder was tantamount to a specific finding that appellant was the principal offender.

Additionally, we must emphasize that the evidence in this case does not reasonably suggest that an individual juror could have found appellant not to have been the principal offender. The evidence adduced by the prosecution does not reasonably compel a juror's conclusion that appellant's participation in this crime was merely that of an aider, an abettor, or a conspirator. Neither does the evidence support any theory other than that presented to the jury by the prosecution. Through the testimony of various witnesses, the prosecution sought to prove that appellant, and not Brown, fired the shot that killed the victim. The possibility that this testimony was self-serving was adequately explored by appellant's attorney by a thorough cross-examination of the state's witnesses. Appellant neither introduced any tangible evidence that he was the accomplice rather than the principal offender, nor did he testify to that effect.

Therefore, we believe that the outcome of the trial would not have been otherwise had the jury made an explicit finding that appellant was the principal offender. Accordingly, we hold that in the instant case it is of no meaningful consequence that the jury verdict form was stated in the disjunctive when (1) upon the signing of a separate verdict form, each juror found that the appellant personally performed every act constituting the offense of aggravated murder, and (2) the evidence in this case does not reasonably suggest that appellant was other than the principal offender.

## V

Appellant's argument in his fifth proposition of law centers upon the failure of the jury to fill out the special verdict form, wherein it was to specifically find whether appellant performed each and every act of the crime, prior to the jury's release from sequestration in the guilt phase of the trial. Appellant alleges that the break in sequestration violated the Criminal Rules and statutes and resulted in prejudicial error *per se*. We disagree.

Our review of the record indicates that the following sequence of events occurred. At the close of jury instructions, the jury was given four verdict forms. The second verdict form, which is the subject matter of this proposition of law, was to be completed if the jury found that appellant personally performed every act constituting the offense of aggravated murder. The jury left the courtroom at 1:00 p.m. on June 10, 1986 with the four verdict forms to begin its deliberations and the following day, at approximately 12:12 a.m., returned, announcing it had reached a verdict. The jury returned verdicts of

guilty on the charge of aggravated murder and also of aggravated robbery with gun specifications to each charge, and a specification that in the commission of the aggravated murder the appellant was committing or attempting to commit aggravated robbery. The jury was polled individually, given a cautionary instruction that it was not to discuss the case or listen to any media coverage of the case, instructed to return for the sentencing phase on June 19, 1986, released, and escorted home at approximately 1:15 a.m.

Thereafter, at 2:30 a.m., the record reflects that the trial judge discovered that the verdict form requesting the jury to determine whether the defendant had personally performed every act constituting the offense of aggravated murder had not been signed by the jurors. Upon discovery of the omission, the jury was advised to return to the courthouse at 9:00 a.m. that same morning. The trial court questioned each juror as to whether he or she had violated the previously given cautionary instruction. None of the jurors indicated that he or she had discussed the verdict with any spouse, friend, or relative, nor had the jurors listened to any news accounts of their verdict. After polling each juror, the jury was instructed, over defense counsel objection, to finish its deliberations. The jury continued its deliberations and unanimously found that the appellant had performed each and every act which constituted the offense of aggravated murder.

Crim.R. 24(G)(2)(c) addresses the court's control of juries in capital cases:

"After submission of a capital case to the jury, the jury shall remain under the supervision of an officer of the court until a verdict is rendered or the jury is discharged by the court."

In the case *sub judice*, it is the appellant's contention that this "break" in the sequestration is a violation of Crim.R. 24(G)(2)(c). The issue of whether the jury in a capital murder case must be sequestered from the time the case is submitted at the guilt phase through and including the penalty phase has been definitively resolved. As this court held in *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, at paragraph twelve of the syllabus, certiorari denied (1985), 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643:

"Ohio's statutory framework for imposition of capital punishment neither mandates nor precludes sequestration of the jury following its guilty verdict but prior to the penalty phase."

In accordance with our prior decision in *Jenkins*, we hereby hold that given the unique nature of the capital case and the bifurcated character of guilt and penalty phases of the trial, a break in the sequestration after the guilt phase does not constitute a discharge of the jury. Additionally, the trial court has the discretion to order the jury to return to the jury room and resume

deliberations upon discovery that a complete verdict has not been rendered.[5] *State v. Maurer* (1984), 15 Ohio St.3d 239, 248–249, 15 OBR 379, 387–388, 473 N.E.2d 768, 779–780. As one federal appeals court stated:

"In any case upon the appearance of any uncertainty or contingency in a jury's verdict, it is the duty of the trial judge to resolve that doubt, for '[t]here is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination.' " *United States v. Morris* (C.A.10, 1979), 612 F.2d 483, 489, quoting *Cook v. United States* (C.A. 5, 1967), 379 F.2d 966, 970; see, also, *United States v. Mears* (C.A. 8, 1980), 614 F.2d 1175, 1179, certiorari denied (1980), 446 U.S. 945, 100 S.Ct. 2174, 64 L.Ed.2d 801 ("A jury may remedy an announced verdict which is incorrectly signed due to inadvertent error."); accord *Slocum v. United States* (C.A. 8, 1963), 325 F.2d 465.

It is within the contemplation of the Criminal Rules that the jury's deliberations may be interrupted without affecting the integrity of the deliberation process or the validity of the verdict.

Therefore, we hold that the Criminal Rules were not violated by the trial judge's ordering the jury to continue deliberations upon the judge's notice of the jury's failure to fill out the verdict form, wherein the jury was specifically to find whether appellant performed each and every act constituting the offense of aggravated murder. The break did not violate the Criminal Rules and was thus not prejudicial *per se.*

We must next give attention to appellant's argument that prejudice attached or occurred between the time of the release of the jury, around 1:15 a.m. on June 11, and their return to the courthouse approximately eight hours later. Upon their return, each juror was individually polled as to whether he

---

5. Crim.R. 31(D) grants the trial judge or any party the absolute right to have the jury polled after it has returned its verdicts. Crim.R. 31(D) states in full:

"When a verdict is returned and before it is accepted the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged."

While each juror's vote in the jury room forms the basis of the announced verdict, Crim.R. 31(D) anticipates the possibility that a juror may dissent from the announced verdict when polled. Consequently, "a jury has not reached a valid verdict until deliberations are over, the result is announced in open court, and no dissent by a juror is registered." *United States v. Taylor* (C.A.5, 1975), 507 F.2d 166, 168. In the event that a juror does dissent from the verdict when polled, an uncertainty to the finality or completeness of the jury's verdict is created and Crim.R. 31(D) gives the trial judge the discretion to, instead of discharging the jury, direct it to retire for further deliberations.

As additional support for our holding that the Criminal Rules permit the integrity of the jury verdict even when the jury's deliberations have been interrupted, see Crim.R. 24(G)(3):

"*Separation in emergency.* Where the jury is sequestered or after a capital case is submitted to the jury, the court may, in an emergency and upon giving cautionary instructions, allow temporary separation of jurors."

or she violated the court's admonition. None of the jurors indicated that he or she did. There is absolutely no evidence in the record which would show that prejudice attached between the time the jury was released until the time deliberations were resumed. Since no prejudice attached and since a break in the jury's deliberations in this case does not constitute prejudicial error *per se,* we overrule appellant's claim on this issue.

## VI

In his sixth proposition of law, appellant argues that the trial court committed plain error by submitting to the jury an instruction and verdict form concerning a firearm specification to the aggravated murder count which was not charged in the indictment. Our review of the record reveals that appellant *was charged* by indictment with one count of aggravated murder with a death penalty specification *and a firearm specification,* and one count of aggravated robbery with a firearm specification. The jury instructions and verdict forms correctly reflected an additional firearm specification to the aggravated murder count. Accordingly, this proposition of law is without merit.

## VII

Appellant's seventh proposition of law is premised solely on the fact that the trial court submitted to the jury a written copy of the instructions to be taken to the jury room during deliberations.

R.C. 2945.10(G) allows the trial court to provide the jury with written instructions. In pertinent part, the statute reads:

"The court, after the argument is concluded and before proceeding with other business, shall forthwith charge the jury. Such charge shall be reduced to writing by the court if either party requests it before the argument to the jury is commenced."

After examining the record, we find that appellant correctly notes that neither party requested written instructions *prior to* closing arguments. The prosecution requested the written jury instructions after the parties gave their arguments and before the jury retired for deliberations. Even though the trial court failed to follow the statute's exact procedure, we find no prejudicial error. R.C. 2945.10(G) also provides that the trial court may "deviate from the order of proceedings listed in the section." Therefore, we hold that the submission of written instructions pursuant to a party's request after closing argument is not reversible error. Appellant's seventh proposition of law is overruled.

## VIII

Appellant's eighth proposition of law alleges a denial of effective assistance of counsel due to defense counsel's failure to raise an insanity defense and to object to the firearm specification not charged in the indictment. After reviewing appellant's argument, we cannot agree. Appellant has failed to meet his burden of establishing ineffective assistance of counsel under the standards enunciated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Accordingly, we reject appellant's eighth proposition of law.[6]

## IX

In his ninth proposition of law, appellant contends that his conviction and sentence should be reversed because he was deprived of a fair trial due to prosecutorial misconduct. Specifically, appellant suggests that the prosecutor's response during voir dire to a question posed by a prospective juror regarding Chevette Brown's involvement in the case amounted to reversible error. We disagree because we find that the prosecutor's response was merely a remark about what the evidence at trial would show. As such, it was not improper.

The remaining three claims of prosecutorial misconduct contained in appellant's ninth proposition were not raised in the court of appeals. Nevertheless, after examining these items, we do not find plain error under Crim.R. 52(B) as these comments did not influence the outcome of appellant's trial. Accordingly, we reject appellant's ninth proposition of law in its entirety.

## X

In his tenth proposition of law, appellant argues that the trial court erred in failing to instruct the jury in the mitigation phase of the trial that the state's pretrial negotiated plea offer constituted a mitigating factor to be weighed

---

6. We note parenthetically that in *State v. Decker* (1986), 28 Ohio St.3d 137, 28 OBR 232, 502 N.E.2d 647, we held that defense counsel's failure to raise the insanity defense at trial did not constitute ineffective assistance of counsel. " * * * [T]he determination not to use the insanity defense was an informed, strategic choice made by defense counsel after a thorough investigation of the relevant law and facts, dictated in large part by appellee's insistent denial of participation in these crimes." *Id.* at 140–141, 28 OBR at 235, 502 N.E.2d at 650. So, too, in the case *sub judice,* appellant's attorney chose not to pursue the insanity defense as such trial strategy would jeopardize his opportunity of convincing the jurors that Chevette Brown, not David Sneed, was the assailant who fatally shot Herbert Rowan. The right to counsel is the right to effective assistance of counsel. It does not guarantee the accused the right to error-proof counsel and "hindsight should play little role in measuring ineffectiveness." *Stano v. Dugger* (C.A.11, 1989), 883 F.2d 900, 912.

against the aggravating circumstance.  Although appellant also maintains that his subsequent "acceptance" of the state's pretrial offer of a negotiated life sentence is likewise a mitigating factor, he cites no evidence of this in the record and neither does he maintain the existence of a negotiated plea bargain as an independent proposition of law.

We hold that the trial court is under no obligation to so instruct the jury in the penalty phase of a capital case.  Accordingly, this proposition is not well taken.

## XI

In his eleventh proposition of law, appellant states that his conviction and sentence should be reversed because records of his incarceration in the Ohio Youth Commission, which he intended to offer as mitigating factors, had been destroyed by the state.  Appellant offers no persuasive law in support of this proposition of law.  Noticeably absent from appellant's argument is any specific way the information would affect the outcome of the penalty phase of the trial.  Appellant simply speculates that the records could possibly have been helpful in mitigation.  Thus, this proposition of law must fail.

## XII

Appellant's twelfth proposition of law challenges appellant's death sentence as constitutionally disproportionate to the life imprisonment sentence received by his accomplice, Brown.  Since appellant failed to raise this at the appellate court, we deem the issue to have been waived.  Notwithstanding the resulting waiver, however, we find no merit to appellant's argument.  Crim.R. 52(B).

As appellant aptly points out in his brief, proportionality review is not constitutionally required.  *Pulley v. Harris* (1984), 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29.  Comparative proportionality review is created by the Ohio statutes.  This court has held that the proportionality review mandated by R.C. 2929.05(A) is satisfied by "a review of those cases already decided by the reviewing court in which the death penalty has been imposed." *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, at paragraph one of the syllabus.  Accordingly, we hold in the case *sub judice* that Brown's non-capital sentence will not result in a reversal of appellant's death penalty.  Under these facts, appellant's argument of disparity of sentences is without merit.

## XIII

Appellant's propositions of law eighteen through thirty-two are raised for purposes of preserving alleged error for appeal and possible state and federal

18

collateral review.[7]

---

7. "Proposition of Law No. 18: Statements by the court, the prosecutor and defense counsel to prospective jurors during voir dire that their verdict as to a life or death sentence is merely a recommendation misstated the law and diminished the jury's responsibility in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9 and 16 and Article II, Section 26 of the Ohio Constitution.

"Proposition of Law No. 19: The non-neutrality of death qualified juries violates a capital defendant's Sixth and Fourteenth Amendment rights to a jury that is fair and impartial and reflects a fair cross-section of the community during the trial of guilt or innocence.

"Proposition of Law No. 20: The death penalty is and will be arbitrarily, freakishly and discriminatorily inflicted, constituting cruel and unusual punishment and a denial of equal protection under the Eighth and Fourteenth Amendments and Article I, Sections 9 and 16 of the State Constitution.

"Proposition of Law No. 21: The death penalty as authorized by Revised Code Sections 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04 and 2929.05 deprives capitally charged defendants of their lives without due process of law in violation of the Fourteenth Amendment and Article I, Sections 9 and 16 of the State Constitution.

"Proposition of Law No. 22: Ohio Revised Code Section 2929.03 and Section 2929.04 are overbroad and violate the equal protection clauses of the Fourteenth Amendment and Article I, Section 2 of the Ohio Constitution by according disparate treatment.

"Proposition of Law No. 23: Use of the same felony twice to elevate an offense to aggravated murder and again to elevate it to capital aggravated murder fails to narrow the class of offenders eligible for the death penalty.

"Proposition of Law No. 24: The vagueness of Sections 2929.03(A)(1)(2) and (3) and (F) and 2929.05 relating to weighing of aggravating and mitigating circumstances leads to arbitrary impositions of the death penalty because the statute, although requiring a weighing process to occur, articulates no weighing method to be employed by the sentencer.

"Proposition of Law No. 25: Sections 2929.021, 2929.03 and 2929.05 fail to assure adequate appellate analysis of excessiveness and disproportionality of death sentences.

"Proposition of Law No. 26: A bifurcated trial violates the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the State Constitution.

"Proposition of Law No. 27: Sections 2929.02, 2929.022, 2929.03, 2929.04 and 2929.05 deprive the capitally charged defendant of due process and constitute cruel and unusual punishment under the United States and Ohio Constitutions because these provisions permit imposition of the death penalty on a less than adequate showing of guilt and appropriateness of the death penalty.

"Proposition of Law No. 28: Ohio's death penalty statutes are unconstitutional *per se* and are violative of one's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the State Constitution.

"Proposition of Law No. 29: The trial court erred instructing the jury in the penalty phase that even if it finds mitigating circumstances, it still may recommend death, thus violating the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9 and 16 of the Ohio Constitution.

"Proposition of Law No. 30: The accused in a capital case is encouraged to waive fundamental state and federal rights, thus rendering the state capital sentencing scheme unconstitutional under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the State Constitution.

"Proposition of Law No. 31: The failure of the trial court to engage in individual sequestered voir dire of the jury prior to the sentencing phase of defendant's trial and its failure to even specifically inquire into the juror's ability to consider evidence in mitigation violated the Sixth,

We note that although we are required by R.C. 2929.05 to review capital cases in a certain manner, it does not require this court to address and discuss, in each succeeding opinion, each and every proposition of law raised by the parties. *State v. Poindexter* (1988), 36 Ohio St.3d 1, 3, 520 N.E.2d 568, 570. Each issue has been previously addressed by this court and we adhere to our past decisions on those issues.

## XIV

Having considered appellant's propositions of law, we must independently weigh the aggravating circumstance against the factors presented in mitigation as is required under R.C. 2929.05(A).

The sole statutory aggravating circumstance was that appellant murdered Herbert Rowan while committing an aggravated robbery. R.C. 2929.04(A)(7). The jury concluded that appellant killed Rowan, inflicting a gunshot wound to the head, during the commission of the offense of aggravated robbery and that appellant "did personally perform every act constituting the offense in this case of Aggravated Murder." Further, the evidence indicated that appellant took Rowan's jewelry and wallet. The state also adduced evidence that, upon firing the fatal shot, appellant forced Brown to shoot the victim a second time in order to ensure that Brown would not tell anyone about the murder; and that appellant drove the victim's car from the crime scene and subsequently went to great lengths to dispose of the body in order to conceal the homicide. From such evidence, the jury could have readily concluded that the prosecution had proven beyond a reasonable doubt that appellant had committed the offense charged.

Against this aggravating circumstance we weigh all mitigating factors drawn from the nature and circumstances of the offense; the history, background, and character of appellant; and any other factors listed in R.C. 2929.04(B)(1) through (7) which exist in this case. We find from the record that the only mitigating factor that applies in this case is R.C. 2929.04(B)(3), which states:

"Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the crimi-

---

Eighth and Fourteenth Amendments to the Federal Constitution and Article I, Sections 9, 10 and 16 of the Ohio Constitution.

"Proposition of Law No. 32: To inform a jury during a capital trial that it may not be influenced by any consideration of sympathy violates the Eighth and Fourteenth Amendments to the United States Constitution and Section[s] 9 and 16, Article I of the Ohio Constitution."

nality of his conduct or to conform his conduct to the requirements of the law."

In regard to the R.C. 2929.04(B)(3) mitigating factor, two psychiatrists testified. It was their opinion that appellant was mentally ill at the time of the offense. Dr. Edward Dutton testified at the mitigation hearing that due to appellant's mental illness he "did not recognize at least certain aspects of the criminality of his act." Dr. Mijo Zakman also gave testimony on appellant's behalf, emphasizing that appellant's bipolar disorder and his borderline intellectual functioning caused appellant's substantially decreased capacity to appreciate the criminality of his conduct.

Other factors introduced by appellant for mitigation purposes were that appellant was raised in an environment of poverty and parental neglect, his mother spent a year in prison for abandoning her children, his father was a chronic alcoholic, and appellant routinely abused alcohol and drugs. Appellant also has a history of being in trouble since the time he was a juvenile. Obviously, such evidence is relevant under R.C. 2929.04(B)(7) and is also part of the history, background and character of the offender.

Having conducted the statutory balancing, we conclude that the aggravating circumstance outweighs the factors presented in mitigation beyond a reasonable doubt.

## XV

Our final task is to determine whether the sentence of death is appropriate in this case. In carrying out this analysis, we find the sentence of death to be appropriate in this case, as it is neither excessive nor disproportionate to the penalty imposed in similar cases. See *State v. Johnson* (1989), 46 Ohio St.3d 96, 545 N.E.2d 636; *State v. Clark* (1988), 38 Ohio St.3d 252, 527 N.E.2d 844; *State v. Barnes* (1986), 25 Ohio St.3d 203, 25 OBR 266, 495 N.E.2d 922, certiorari denied (1987), 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 701.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, DOUGLAS and RESNICK, JJ., concur.

WRIGHT and H. BROWN, JJ., dissent.

WRIGHT, J., dissenting. I must respectfully dissent. The defendant in this case was indicted for aggravated murder pursuant to R.C. 2929.04(A)(7), which states that the imposition of a death penalty for aggravated murder is precluded unless it is proved beyond a reasonable doubt that "[t]he offense was committed while the offender was committing, attempting to commit, or

fleeing immediately after committing * * * kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, *and* either the offender was the *principal* offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design." (Emphasis added.)

In this particular case, there was no finding that prior calculation and design were involved, and the jury did *not* make a specific finding that the defendant was the principal offender.[8] Indeed, the jury made an ambiguous finding in this matter.[9] Aside from the testimony of one accomplice, the only testimony linking appellant to the shooting was that of Chevette Denise Brown, who after entering into a plea bargain for her life and pleading guilty to aggravated murder, agreed to testify against Sneed. She testified that Sneed told her in no uncertain terms to shoot the victim and that Sneed later turned over the gun to her, whereupon Brown shot the victim in the back of the head.

In the majority opinion it is suggested that the absence of a clear finding that defendant was the principal offender is of no consequence. I simply cannot agree. The General Assembly has mandated a finding by the jury that

---

8. For an offender to be subject to the death penalty under R.C. 2929.04(A)(7), the state must prove beyond a reasonable doubt that the offender intended to kill the victim and additionally that he was the principal offender. *State v. Jenkins* (1984), 15 Ohio St.3d 164, 177, 15 OBR 311, 322–323, 473 N.E.2d 264, 280, at fn. 17, states:

"* * * More importantly, while a conviction under R.C. 2903.01(B) cannot be sustained unless the defendant is found to have intended to cause the death of another, the state, in order to prevail upon an aggravating circumstance under R.C. 2929.04(A)(7), must additionally prove that the offender was the principal offender in the commission of the aggravated murder or, if the offender was not the principal offender, that the aggravated murder was committed with prior calculation and design."

Here the jury was instructed that it could find appellant guilty of the aggravated murder specification if it agreed with one of three possible theories:

(1) that Sneed was the principal offender;
(2) that Sneed aided and/or abetted Brown; or
(3) that Sneed conspired with Brown.

This instruction was given to the jurors in writing and further set forth on the verdict form.

This erroneous instruction coupled with the verdict form discussed *infra* negates the possibility of a sentence of death.

9. One must scrutinize the disjunctive nature of the verdict form signed by all members of the jury:

"* * * We the Jury further find the Defendant, DAVID ALLEN SNEED, GUILTY of the Aggravating Circumstances as set forth in the FIRST SPECIFICATION, THAT OF AGGRA-VATION, to wit: the commission of the offense of Aggravated Murder while committing or attempting to commit or while fleeing immediately after committing or attempting to commit Aggravated Robbery and he was *the principal offender and/or aider and/or abettor, and/or conspirator* with Chevette Denise Brown in the commission of Aggravated Murder. * * *" (Emphasis added.)

the defendant was the principal offender or that the offense was committed with prior calculation and design.

By requiring such a finding, the statute narrows the class of offenders subject to the penalty of death. This is an essential requirement if R.C. 2929.04(A)(7) is to pass constitutional muster. *Zant v. Stephens* (1983), 462 U.S. 862, 876–877, 103 S.Ct. 2733, 2742–2743, 77 L.Ed.2d 235, 249–250. The jury verdict here does not meet that important statutory requirement, and my colleagues' apparent desire, after reviewing the record, to substitute their judgment for that of the jury does not eliminate plain error here. I would remand the defendant for resentencing pursuant to law.

H. BROWN, J., concurs in the foregoing dissenting opinion.