JOURNAL ENTRY and OPINION
In these consolidated appeals, the state seeks interlocutory review of the trial court's order granting the motion to suppress filed by defendants Darrell Moncrease, Daniel Moncrease, Jr. and Daniel Moncrease III. A fourth defendant, Ricky Scott, was not a party to the motion and is not a party to this appeal. The state's sole assignment of error asserts:
 THE TRIAL COURT ERRED IN FINDING THAT DANIEL MONCREASE, JR. DID NOT VOLUNTARILY CONSENT TO THE SEARCH OF THE HOUSE.
We find no error in the, trial court's decision and affirm its judgment.
 I. FACTS AND PROCEDURAL HISTORY
In a nine-count indictment filed December 18, 1998, appellee Daniel Moncrease III is charged with trafficking in cocaine, possession of drugs, and possession of drugs with a major drug offender specification. His brother, appellee Darrell Moncrease, is separately charged with possession of drugs, as is their father, appellee Daniel Moncrease Jr. All three appellees are jointly charged with possession of criminal tools. Other counts of the indictment charge co-defendant Ricky Scott with trafficking in cocaine and possession of drugs.
Appellees moved the court to suppress evidence seized during a warrantless search of their residence. They argued there were no exigent circumstances justifying the warrantless search, and appellee Daniel Moncrease Jr.'s consent to the search was invalid. The court held a hearing on February 28, 1999, and on March 12, 1999 entered an order granting the appellees' motion and suppressing all evidence seized during the search of the home.
At the hearing on the motion to suppress, the, state presented the testimony of Cleveland Police Department Detectives Jamaal Ansari, Mark Mazur, and Todd Clark. Appellees presented the testimony of Sergeant James Lewis and appellee Daniel Moncrease Jr.
On September 17, 1998, Sergeant Lewis directed Detective Clark to obtain a search warrant for the appellees' residence. Sergeant Lewis then ordered Detective Mazur to secure the premises pending the warrant, to prevent the destruction or disappearance of evidence. Lewis admitted he did not know whether anyone was in the house when he gave this order; they had seen appellee Daniel Moncrease III leave the premises and did not know whether anyone else was present.
Detective Mazur knocked on the door and identified himself as a police officer. He claimed a male approached the door, then ran. On Sergeant Lewis's instruction, Detective Mazur broke down the door, which was locked, and pursued the male, Daniel Moncrease Jr. (hereinafter "Mr. Moncrease"), apprehending him at the top of the stairs. Mazur denied he handcuffed Mr. Moncrease, but both Sergeant Lewis and Mr. Moncrease testified that Mr. Moncrease was initially handcuffed. Mr. Moncrease was docile, not combative.
Detective Ansari testified that he ascertained that Mr. Moncrease was the owner of the premises. Ansari warned Mr. Moncrease of his rights and advised him that a controlled purchase of drugs had been made from his house. Ansari then told Mr. Moncrease that "they were going to probably get a search warrant for his house. I said that I would appreciate it if he would cooperate and give us a consent to search." Ansari claimed Mr. Moncrease consented. There were six to eight police officers in the house at the time. Detective Ansari says he read the consent-to-search form to Mr. Moncrease. Detective Charchenko completed the consent form, and Mr. Moncrease signed it.
Mr. Moncrease claimed he worked third shift and was asleep when the police came that day. He testified that he was awakened by eight or nine police officers, some of whom had weapons drawn and pointing at him. He said he was handcuffed and taken downstairs. Mr. Moncrease asked to put pants on, and the police took him back upstairs. They showed him a "substance" and asked him if he knew what it was, then took him back downstairs. He said the police told him they would board up his house if he did not sign the consent form, and he signed it because he was afraid; he did not feel he had a choice.
The trial court found the state had failed to demonstrate that Mr. Moncrease's consent to the search was voluntary. The court first noted that the police were in a position to seek Mr. Moncrease's consent through "exigent circumstances" they themselves created. The police had no reason to believe anyone was present at the premises; the only occupant they had observed had left. The police also had no reason to believe that anyone on the premises was aware of the police presence. Thus, "[s]ending Detective Mazur to the door manufactured the situation where police presence would be detected and the possible destruction of evidence might occur."
The court found Mr. Moncrease's consent was not voluntarily obtained. There were at least six officers in the Moncrease house, and they were armed. They had forcibly entered through a locked door. Mr. Moncrease was handcuffed. The court determined that under the totality of circumstances, Mr. Moncrease's consent was not voluntarily and freely given and therefore suppressed all evidence seized during the search of the premises.
 II. LAW AND ANALYSIS A. Jurisdiction.
As a preliminary matter, the court observes that the notice of appeal originally filed by the state did not include the certification required by Crim.R. 12(J).[1] Three weeks after the original notice was filed, the state filed an amended notice of appeal, which included the Rule 12(J) certification, but did not obtain prior leave to amend.
The certification required by Rule 12(J) is jurisdictional,State v. Buckingham (1980), 62 Ohio St.2d 14, syllabus, raising a question of whether the certification can be supplied by amendment. The only published Ohio case on this subject is In re Hester
(1981), 1 Ohio App.3d 24, 26, which holds:
 While there are certain errors, such as the failure of the state to file a notice of appeal within seven days after the date of the entry of judgment pursuant to Crim.R. 12(J), Juv.R. 22(F) and App.R. 4(B), which cannot be corrected by amendment, we do not feel the inadvertent failure of the state to include all of the proper language within its certification is such an error.
Appellate Rule 3(F) provides that the court of appeals may allow an amendment of a timely filed notice of appeal, within its discretion and upon such terms as are just. This rule suggests the timeliness of the notice of appeal is critical, but at least some of the contents of the notice can be corrected by amendment, with leave of court.
We agree with the Hester court that the certification required by Crim.R. 12 (J) may be supplied by amendment. Like the court's certification under Rule 54 (B), that "there is no just reason for delay," the Crim.R. 12 (J) certification provides an element critical to the finality of the decision. See State v. Collins (1970),24 Ohio St.2d 107. Unlike the Civ.R. 54 (B) certification, though, the Crim.R. 12 (J) certification is supplied by a party, the state, not by the court. Moreover, the certification is necessarily supplied after the judgment, not in it; the timing of the certification does not affect the timeliness of the appeal.
In this case, the original notice of appeal was timely filed. Defendants-appellees will not be prejudiced if the state is allowed to amend its notice to include the Crim.R. 12 (J) certification. Therefore, we grant the state leave to file its amended notice of appeal and find we have jurisdiction over this appeal.
 B. Merits.
On a motion to suppress, the trial court is the factfinder and resolves questions of fact and evaluates the credibility of the witnesses. This court must accept the trial court's factual findings if they are supported by competent, credible evidence. This court must then determine whether the facts found by the trial court meet the applicable legal standard or not, without deference to the trial court's conclusion.
The legal standards governing this decision are well settled. A warrantless search is per se unreasonable under the Fourth Amendment, "subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967),389 U.S. 347, 357. One such exception is voluntary consent to the search by one with authority over the premises. State v. Sneed
(1992), 63 Ohio St.3d 3, 6-7 (citing Schneckloth v. Bustamonte
[1973], 412 U.S. 218). Voluntariness is a question of fact and depends on the totality of the circumstances. State v. Retherford
(1994), 93 Ohio App.3d 586 (citing Schneckloth). The state has the burden of proving that consent was freely and voluntarily given.Id.
Knowledge of the right to refuse is not a prerequisite to voluntary consent, but consent must not have been coerced by threats or force or by a claim of lawful authority. Schneckloth,412 U.S. at 233. The voluntariness of consent is vitiated by police statements that lead the person to believe that refusing consent will be fruitless. State v. Foster (1993), 87 Ohio App.3d 32.
The trial court here found that the officers gratuitously made the residents of the house aware of their presence, thus justifying their entry to secure the premises and prevent the destruction of evidence and creating the circumstance under which they could request consent to search. "Police cannot create an exigency by announcing their presence and then entering the home to prevent the destruction of drugs." State v. Sims (1998), 127 Ohio App.3d 603,612; State v. Jenkins (1995), 104 Ohio App. 265, 269; cf. UnitedStates v. Santana (1976), 427 U.S. 38; Vale v. Louisiana (1970),399 U.S. 30. Mr. Moncrease, Jr.'s consent to search was tainted by the illegal entry. United States v. Timberlake (C.A.D.C. 1990),896 F.2d 592.
The trial court further found that there were coercive circumstances surrounding Mr. Moncrease's consent to the search, including the overwhelming number of officers on the premises, the fact that they were armed, the fact that they had forced entry, and the fact that they handcuffed him. In addition, Mr. Moncrease was aware the officers had already entered several rooms and was told that a warrant would be obtained if he did not consent, making him believe it was pointless for him to resist.
We agree with the trial court that the totality of these circumstances do not support a finding that Mr. Moncrease's consent to search was voluntary. The sudden and forcible entry of the police into his home, their show of strength through the number of officers, and their use of guns and handcuffs created a coercive environment. Though Mr. Moncrease was not handcuffed and was not surrounded by all of the officers on the premises at the exact moment he was asked to give consent, the coercive forces cited by the court were sufficiently recent to conclude they continued to affect Mr. Moncrease; he was aware that all of the officers remained nearby, on the premises. Furthermore, Mr. Moncrease was told the police were probably going to obtain a warrant anyway, making him believe a search would occur whether he consented or not.
For these reasons, we affirm the trial court's decision and remand this matter for further proceedings.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for further proceedings.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE. A.J. and ANNE L. KILBANE, J. CONCUR
 ________________________ KENNETH A. ROCCO, JUDGE
[1] Crim.R. 12(J) provides:
 When the state takes an appeal as provided by law from an order suppressing or excluding evidence, the prosecuting attorney shall certify that: (1) the appeal is not taken for the purpose of delay; and (2) the ruling on the motion or motions has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.
 The appeal * * * shall not be allowed unless the notice of appeal and the certification by the prosecuting attorney are filed with the clerk of the trial court within seven days after the date of the entry of the judgment or order granting the motion.* * * *