OPINION
{¶ 1} These appeals are brought by Jason M. Barchet, a juvenile, from the judgments of the Court of Common Pleas, Hancock County, Juvenile Division, adjudicating him delinquent and committing him to the custody of the Ohio Department of Youth Services for a period of six months or until the day he attains the age of twenty-one.
 {¶ 2} The record presents the following facts. On April 24, 2001, two masked men wearing gloves entered the home of Lester Bright at 10400 Township Road 244 in Findlay, Ohio. The intruders threw Bright to the ground, struck him repeatedly on the face, tied him to a chair with duct tape and demanded his money. Bright directed the intruders to his wallet but denied having any other money in the house. One of the assailants located Bright's personal firearm and proceeded to threaten him with that weapon. The assailants then secured Bright in a bathroom and proceeded to destroy various mirrors, glass and china throughout the house. The assailants then exited the house and drove away with Bright's Ford pickup truck. Approximately one hour later, Bright managed to free himself from the tape. Finding the telephone ripped out of the wall and his truck missing from the driveway, Bright drove his tractor to a neighbor's house to call the police.
 {¶ 3} The Hancock County Sheriff's Department dispatched Deputy Fred Smith to Bright's location. Deputy Smith observed visible abrasions and bruises on Bright's face. Bright described his assailants as two white males approximately 5'8" and 5'10" respectively. After broadcasting a description of the men and the stolen truck, the deputy escorted Bright back to 10400 Township Road 244 where he observed considerable property damage and general disorder. It was later determined that in addition to the truck, the assailants had made off with a television, money, alcohol, food and Bright's personal fire arm, a .22 caliber rifle. Bright's pick-up truck was found abandoned in a Wal-Mart parking lot that same evening.
 {¶ 4} A subsequent investigation, conducted by Detective Steve Smith of the Hancock County Sheriff's department, led authorities to Greg Robinson (44) and the juvenile appellant Jason Barchet (15). Robison and Barchet lived together at the home of Candace Reek at 1318 Fox Street in Findlay. Reek is Barchet's mother and is involved romantically with Robinson. Additionally, Robinson is an acquaintance of Lester Bright and often fished on Bright's property.
 {¶ 5} Detective Smith interviewed Barchet at Findlay High School in May 2001. Barchet denied involvement in the robbery and assault of Lester Bright. Further investigation led authorities to Nicholas Sheehan (19), who they discovered also lived with Barchet and Robinson at the time of Bright's assault. Detective Smith made contact with Sheehan at the Van Wert County Sheriff's office where he was being detained on an unrelated charge. Initially, Sheehan denied involvement in the Bright assault. However, after further discussion with Detective Smith, Sheehan admitted that he, Greg Robinson, and Jason Barchet had planned to rob Bright and had gone so far as to obtain masks and gloves and to call Bright's house using Robinson's cell phone. Sheehan told Smith, however, that he had backed out at the last minute and had no information as to what went on at 10400 Township Road 244 on April 24, 2001. Based on previously obtained information, Smith informed Sheehan that he did not believe Sheehan was being entirely honest and thereafter Sheehan ended the interview.
 {¶ 6} In September 2001, Detective Smith conducted a second interview with Sheehan. This time, Sheehan gave Smith the same version of events as he had previously, however this time he admitted to his involvement in the entire incident. Sheehan explained the events of April 24, 2001 in great detail. According to Sheehan, he and Barchet cut Bright's phone line from the outside and then entered the house through the kitchen door while Robinson waited outside in his van. Sheehan told Detective Smith that he held Bright down while Barchet hit the man and that they both participated in taping Bright to the chair. Sheehan stated that he cut a slit in the tape covering Bright's mouth so that Bright would not suffocate. Afterwards, Sheehan explained that they took Bright's Ford truck to prevent him from contacting authorities and then abandoned the truck in the Wal-Mart parking lot. Thereafter, they drove to Robinson's parent's home where Robinson proceeded to hide the stolen rifle underneath a bale of hay.
 {¶ 7} Based on this statement, Sheehan was later indicted one count of aggravated robbery, one count of aggravated burglary and one count of aggravated kidnapping, each felonies of the third degree. Sheehan plead guilty to all charges and agreed to cooperate in any co-defendant's case in exchange for the state's promise to recommend a four-year sentence with each charge to be served concurrently. The final disposition of that matter is not a part of the current record.
 {¶ 8} Subsequently, in October 2001, Detective Smith attempted to conduct a second interview with Barchet, who at this time was hospitalized in Toledo following a traffic accident. According to Detective Smith, on this occasion Barchet stated that he was "involved" in the incident at Lester Bright's but did not want to make a full statement until he had an attorney present. Consequently, Detective Smith terminated the interview. A third interview with Barchet never materialized.
 {¶ 9} After speaking with Barchet at the hospital, Detective Smith received information regarding a .22 caliber rifle being recovered by a man named Willis Leathers. Smith contacted Leathers who explained that he found the rifle underneath a bale of hay, outside of the trailer he owned and rented to Pete and Marianne Robinson, Greg Robinson's parents. The rifle was determined to belong to Lester Bright. Also around this time, Detective Smith subpoenaed copies of Greg Robinson's phone records and was able to verify that a telephone call had indeed been made from Greg Robinson's cell phone to Lester Bright's house on April 24, 2001.
 {¶ 10} On December 18, 2001, Appellant Barchet was charged with juvenile delinquency regarding the events of April 24, 2001. The complaint, filed in the Hancock County Court of Common Pleas, Juvenile Division, included allegations of theft with a firearm specification, aggravated robbery with a firearm specification, abduction with a firearm specification, aggravated burglary with a firearm specification and disruption of public services.
 {¶ 11} A juvenile adjudicatory hearing was held on April 26, 2002 regarding the delinquency complaint. During the State's case in chief, Nicholas Sheehan took the stand and testified to the same version of events he communicated to Detective Smith in September 2001. Specifically, Sheehan testified that he and Barchet broke into 10400 Township Road 244 on April 24, 2001 and subsequently assaulted, robbed, and tied up Lester Bright. According to Sheehan, the plan was derived after Greg Robinson told Sheehan and Barchet that Lester Bright, a man on whose property he fished, probably had $8,000 in cash inside of his house. The threesome wanted the money so that they could purchase drugs and alcohol. Sheehan testified that Greg Robinson drove the pair to 10400 Township Road 244 and waited outside in his blue van while Sheehan and Barchet executed the robbery. Afterwards, the group abandoned Bright's Ford truck in the Wal-Mart Parking lot and then drove to Robinson's parent's house to hide the stolen rifle.
 {¶ 12} During the presentation of the defense, Greg Robinson took the stand and testified that he had nothing to do with the robbery of Lester Bright and could not attest to his whereabouts on April 24, 2001. Robinson had no information regarding the calls to Mr. Bright's house made from his cell phone nor did he have knowledge with respect to the discovery of Mr. Bright's rifle outside of his parent's residence. Candace Reek, Appellant's mother, took the stand and testified that when Barchet told Detective Smith that he was "involved" in the robbery, Barchet was in the hospital and under the influence of liquid morphine. Finally, Barchet took the stand in his own defense and testified that he had nothing to do with the events of April 24, 2001 and on that night had been playing cards with Greg Robinson and three other people. Barchet further testified that he never told Detective Smith that he was "involved" in the robbery but instead told the detective that he would be willing to reveal what he had heard about the incident from other people.
 {¶ 13} At the conclusion of the hearing, the court found the Appellant Barchet to be delinquent. In rendering its decision the court stated that it found Sheehan's testimony implicating Appellant to be credible and sufficiently corroborated. On May 2, 2002 Appellant was remanded to the custody of the Ohio Department of Youth Services for no less than six months and no longer than the period of time until he attains the age of twenty-one. It is from this finding of delinquency and subsequent sentence that Appellant now appeals.
 {¶ 14} Appellant raises the following assignments of error.
 {¶ 15} "I The trial court's judgment is against the manifest weight of the evidence.
 {¶ 16} "II The trial court erred by not granting the juvenile-appellant's motion to acquit after presentation of the state's case in chief. "
 First Assignment of Error {¶ 17} In his first assignment of error, Appellant argues that the juvenile court erred by adjudicating him delinquent as that decision was against the manifest weight of the evidence. For the reasons stated herein, we disagree.
 {¶ 18} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. To reverse a conviction as against the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all inferences, consider the credibility of the witnesses, and determine whether, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 19} In other words, to reverse the judgment of the trial court on the basis of weight of the evidence, the appellate court must sit as a "thirteenth juror," ultimately disagreeing with the factfinder's resolution of conflicting evidence. Thompkins, 78 Ohio St.3d at 387,
citing Tibbs v. Florida (1982), 457 U.S. 31. A court of appeals may reverse on manifest weight of the evidence grounds only in exceptional cases "where the evidence weighs heavily against conviction." State v.Mendoza (March 31, 2000), Hancock App. No. 5-99-46, citing Thompkins,78 Ohio St.3d at 389.
 {¶ 20} Here, Appellant argues that the prosecution presented no tangible evidence linking him to the robbery and assault of Lester Bright. Additionally, Appellant argues that the testimony of Nicholas Sheehan is inherently unreliable since Sheehan was offered a reduced sentence in exchange for his testimony. Upon a complete and thorough review of the record, we do not find either argument well-taken nor do we find the evidence to weigh heavily against Appellant's delinquency adjudication.
 {¶ 21} First of all, we disagree with Appellant's insinuation that Sheehan pulled Appellant's name out of thin air when he implicated Appellant in the robbery of Lester Bright. The Appellant was first named as a participant in the robbery, along with Greg Robinson, by an anonymous "Crime Stoppers" call and by a Findlay High School student interviewed by Detective Smith. Indeed, Appellant was a suspect in this case before Nicholas Sheehan's identity was made known to police. In fact, it was through the investigation of Appellant that Detective Smith first became aware of Sheehan's possible involvement.
 {¶ 22} Secondly, we disagree that Sheehan's testimony was inherently unreliable. Neither the United States Supreme Court nor the Ohio Supreme Court have held that plea-bargaining with a defendant in exchange for the defendant's testimony is unconstitutional. State v.Jackson (1977), 50 Ohio St.2d 253, 258, judgment vacated on other groundsby Jackson v. Ohio (1978), 438 U.S. 911, 98 S.Ct. 3136. Furthermore, the fact that a witness has a strong motive to fabricate evidence as a result of a promise of a reduced sentence in exchange for testimony does not render that witness incompetent to testify. State v. Sneed (1992),63 Ohio St.3d 3, 9, 584 N.E.2d 1160. Rather, it is the function of the trier of fact to determine how much weight to give the accomplices testimony. Id.
 {¶ 23} Here, the trial court found Sheehan's testimony to be credible and we concur in that assessment. Though Sheehan denied involvement initially, and then admitted to his involvement only partially before eventually confessing, his substantive recollection of what took place on April 24, 2001 remained consistent. Detective Smith testified that he never discovered evidence that substantially contradicted Sheehan's statement.[1] Appellant argues that Sheehan made his statement only after being promised a reduced sentence. However, the record reveals that Sheehan was offered his plea bargain well after his full statement to Detective Smith. For his part, Detective Smith testified that the only promise made to Sheehan was that the police report would reflect Sheehan's honesty and cooperation.
 {¶ 24} Furthermore, Sheehan's testimony was corroborated on numerous occasions. For instance, Sheehan testified that the group used Robinson's cell phone to call Lester Bright's home in order to see if he was home alone. Telephone records revealed that on April 24, 2001, a call was placed from Robinson's cell phone to Lester Bright's house. Sheehan told police that Robinson chose Lester Bright because he fished on Bright's property and knew he had money. Lester Bright himself confirmed that he was acquainted with Robinson and had allowed him to fish on his property. Sheehan knew that Bright's Ford pickup truck had been abandoned at Wal-Mart and finally, Willis Leathers found Bright's .22 caliber rifle in the exact spot Sheehan told police that Robinson placed it.
 {¶ 25} Finally, we reject Appellant's argument that his delinquency adjudication was not supported by tangible evidence connecting him to the scene of the robbery and therefore was against the manifest weight of the evidence. We find that the corroborated and uncontradicted testimony of Nicholas Sheehan to be more than sufficient to overcome any doubt created by the lack of physical evidence, especially when weighed against the uncorroborated, self-serving testimony of Appellant and Greg Robinson. The manifest weight of the evidence supports Appellant's delinquency adjudication. Accordingly, Appellant's first assignment of error is overruled.
 Second Assignment of Error {¶ 26} In his second assignment of error, Appellant argues that the trial court erred by not granting his motion to acquit pursuant to Crim.R.29(A). Appellant's argument is not well taken.
 {¶ 27} During criminal proceedings, Crim.R.29(A) motions are made by the defense at the conclusion of either side's presentation of the evidence and basically allege that the prosecution has failed to present sufficient evidence as a matter of law and therefore the case should not go to the trier of fact, usually the jury. Here, we review a proceeding conducted in juvenile court. Juvenile proceedings are not criminal proceedings and thus, the rules of criminal procedure do not apply.
 {¶ 28} Furthermore, the Rules of Juvenile Procedure do not provide for a counterpart to Crim.R.29(A). The closest provision, Juv.R.29(F)(1) provides that a juvenile court may dismiss a delinquency complaint upon a finding that the allegations in the complaint have not been proven beyond a reasonable doubt. However, Juv.R.29(F)(1) does not make a distinction between the sufficiency of the evidence and the weight of the evidence. Rather, a juvenile court's disposition of a motion made pursuant to Juv.R.29(F)(1) must encompass the consideration of both the sufficiency and the weight of the evidence. We have already determined that Appellant's delinquency adjudication is supported by the manifest weight of the evidence, of which sufficient evidence is inherent. Accordingly, Appellant's second assignment of error is overruled.
 {¶ 29} For the reasons stated it is the order of this Court that the judgments of the Hancock County Court of Common Pleas, Juvenile Division are hereby AFFIRMED.
Judgments affirmed.
 HADLEY and WALTERS, JJ., concur.
[1] The only conflicting evidence in Sheehan's statement involved the time of day in which he stated a telephone call was placed to Lester Bright from Greg Robinson's cell phone. Telephone records indicated that Sheehan's recollection of when the call took place was off by several hours.