O P I N I O N
Appellant, Edward Huckabee, appeals from his conviction on several drug-related offenses following a trial by jury in the Geauga County Court of Common Pleas.
The following facts are relevant to this appeal. In August 1998, the Bainbridge Township Police Department began conducting an undercover narcotics investigation of appellant. As part of the investigation, the department enlisted the assistance of a confidential informant to make controlled purchases of illegal drugs.[1]
The procedure for the controlled purchases was essentially the same each time. Before driving to appellant's home, the informant, along with his vehicle, were thoroughly searched to ensure that he had no money or drugs in his possession. The informant was then equipped with a wire transmitter that would enable the investigators to hear and record his conversations with appellant. He was then given police-issued money with which to purchase the drugs.
An officer in a marked car would follow the informant to appellant's home, while other investigators were stationed on the streets around the residence to visually monitor the transactions. After an exchange was made, the informant would then drive back to the Bainbridge Township police station, at which time he would turn over all narcotics purchased from appellant, in addition to any unused money. The investigators then conducted another search of the informant and his vehicle to confirm that he was not concealing anything. After the search, the informant would be interviewed by the investigators to go over what had occurred during the buy. In total, the informant either purchased or attempted to purchase narcotics from appellant on four different occasions.
As a result of this investigation, appellant was secretly indicted by the Geauga County Grand Jury on the following charges: (1) one count of trafficking in cocaine in violation of R.C. 2925.03(A)(C)(4)(a), a felony of the fifth degree; (2) two counts of trafficking in cocaine in violation of R.C. 2925.03(A)(C)(4)(d), felonies of the third degree; (3) one count of trafficking in crack cocaine in violation of R.C.2925.03(A)(C)(4)(f), a felony of the first degree; and (4) two counts of possessing criminal tools in violation of R.C. 2923.24(A), felonies of the fifth degree. Both of the counts under R.C. 2925.03(A)(C)(4)(d) also contained a property forfeiture specification pursuant to R.C. 2925.42. Appellant retained an attorney to represent him and entered an initial plea of not guilty to the charges.
The case against appellant proceeded to a jury trial on June 28, 1999. As part of its case-in-chief, the state called the informant and several police officers involved in the investigation to testify about the purchasing procedure described above. The state also played the tape recordings that had been made of the informant's encounters with appellant.
After three days of testimony, the jury returned verdicts finding appellant guilty of all six charges. Appellant then agreed to have the forfeiture issue decided by the trial court. A forfeiture/sentencing hearing was conducted on August 18, 1999, and in a judgment entry dated August 24, 1999, the trial court found, by a preponderance of the evidence, that appellant had used the truck in the commission of two of the offenses. As a result, the court ordered that the vehicle be seized and sold by the Bainbridge Township Police Department.
The next day, August 25, 1999, the trial court issued a second judgment entry in which it sentenced appellant to the following: (1) ten years on the trafficking in crack cocaine charge under R.C. 2925.03(A)(C)(4)(f); (2) three years on the first charge of trafficking in cocaine under R.C.2925.03(A)(C)(4)(d) to run consecutively with count one; (3) one year on the first charge of possession of criminal tools under R.C. 2923.24(A) to run concurrently with count two; (4) three years on the second charge of trafficking in cocaine under R.C. 2925.03(A)(C)(4)(d) to run consecutively with counts one and two; (5) one year on the second charge of possession of criminal tools under R.C. 2923.24(A) to run concurrently with count four; and (6) one year on the trafficking in cocaine charge under R.C. 2925.03(A)(C)(4)(a), also to run concurrent with count four.
From this judgment, appellant filed a timely notice of appeal. He now asserts the following assignments of error for our consideration:
 "[1.] The trial court erred to the prejudice of the Appellant when it convicted him of two counts of `possessing criminal tools.'
 "[2.] The trial court erred to the prejudice of the Appellant in that the verdicts reached by the jury were against the manifest weight of the evidence presented during the trial.
 "[3.] The trial court committed plain, reversible error, to the prejudice of Defendant-Appellant, by permitting numerous errors during trial, the cumulative effect of which deprived Defendant-Appellant of a fair trial.
 "[4.] The Defendant-Appellant was deprived of the effective assistance of counsel, and was prejudiced thereby."
 In his first assignment of error, appellant argues that the trial court erred in convicting him of two counts of possessing criminal tools under R.C. 2923.24(A) because the alleged conduct underlying the convictions was proscribed by a less serious criminal offense; i.e., R.C. 2925.13(A), permitting drug abuse.
Initially, we note that this argument was neither raised nor considered in the trial court. Appellant has, therefore, waived the right to have the issue reviewed because an appellate court will not normally consider a question raised for the first time on appeal. State v. Childs (1968),14 Ohio St.2d 56, paragraph three of the syllabus (holding that an "appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time which such error could have been avoided or corrected by the trial court."). See, also, State v.Awan (1986), 22 Ohio St.3d 120, 122; State v. Stamper (Aug. 11, 2000), Portage App. No. 99-P-0082, unreported, at 8, 2000 Ohio App. LEXIS 3659.
Nevertheless, even assuming arguendo that appellant's allegations were preserved for appellate purposes, they still lack merit. Appellant's conduct in the instant matter essentially violated two separate code sections, R.C. 2923.24 and R.C. 2925.13. However, it is generally accepted that a prosecutor has discretion as to what offense is charged when two statutes forbid the same conduct so long as the prosecutor's discretion is not exercised in such a way as to discriminate against a particular class of persons to which the defendant belongs. State v.McDonald (1987), 31 Ohio St.3d 47, 50.
As a result, "[i]n case after case, it has been determined that a prosecutor may charge a defendant under any statute which proscribes [a] particular criminal behavior." State v. Stanford (Aug. 30, 1996), Trumbull App. No. 95-T-5358, unreported, at 4-5, 1996 Ohio App. LEXIS 3674. Thus, a prosecutor is not required to proceed under the statute with the lower penalty, and there is no constitutional violation merely because a prosecutor chooses to pursue the more serious offense. Stanford at 6-7.
Notwithstanding the foregoing, some support for appellant's position can be found in State v. Wilson (1979), 58 Ohio St.2d 52, 55-56, wherein the Supreme Court of Ohio determined that if two statutes "prohibit identical activity, require identical proof, and yet impose different penalties," sentencing a person under the statute with the higher penalty violates the guarantee of equal protection. Wilson, however, also held that if the more severe charge requires the state to prove an additional element, the defendant can be convicted on that charge without violating any constitutional guarantees. Id. at 55; Stanford at 8-9.
Here, despite appellant's assertions to the contrary, the two statutes do require different measures of proof. Under R.C. 2923.24, the state must prove that appellant acted "with purpose" to use an item in a criminal manner, while under R.C. 2925.13, the state only has to prove that appellant "knowingly" permitted his vehicle to be used for the commission of a felony drug abuse offense. Thus, the state is required to prove an additional element in order to convict a person of possession of criminal tools as opposed to permitting drug abuse.[2] This additional element of proof placed upon the state, as part of its burden of proof, clearly distinguishes the offenses. As a result, Wilson is not applicable, and the state could charge appellant with the more serious offense. Appellant's first assignment of error has no merit.
Under his second assignment of error, appellant claims the verdicts reached by the jury were against the manifest weight of the evidence and that his convictions, therefore, should be overturned.
When reviewing a claim that the judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Statev. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
"The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). In doing so, the reviewing court must defer to the factual findings of the trier of fact and to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
After reviewing the entire record and weighing the evidence presented along with all reasonable inferences, and considering the credibility of the witnesses, we conclude that the jury did not lose its way or create a manifest miscarriage of justice in connection with appellant's convictions. To convict appellant of trafficking in cocaine, the state was required to prove, beyond a reasonable doubt, that appellant knowingly sold or attempted to sell "cocaine or a compound, mixture, preparation, or substance containing cocaine[.]" R.C. 2925.03(A)(C)(4). Likewise, to convict appellant of possession of criminal tools, the state had to show that he possessed or had under his control "any substance, device, instrument, or article with purpose to use it criminally." R.C.2923.24(A).
At trial, the informant testified that on August 12, 1998, he drove to appellant's home in Bainbridge Township to make a controlled purchase of narcotics. When he arrived, the informant, who had known appellant for several years, asked appellant for an ounce of cocaine. Appellant took the money and told the informant to wait for him at a nearby carry out. The informant drove to the designated spot, and shortly thereafter, appellant appeared and gave him the drugs.
The informant next testified that on August 25, 1998, he once again went to appellant's home to purchase drugs. When the informant pulled up in front of appellant's house, he noticed appellant sitting in his truck. The informant entered the vehicle's cab, at which time he purchased cocaine.
On September 17, 1998, the informant, accompanied by John Clayton ("Clayton"), an agent with the Department of Justice's Drug Enforcement Administration, drove to appellant's residence to purchase cocaine. As with the previous buy, appellant was sitting in his truck in front of his home. This time, however, appellant told the informant to follow him in his car. When they stopped, appellant asked the informant to meet him at his truck. The informant walked up to the passenger side of the truck and completed the deal. This testimony was corroborated at trial by Clayton, who identified appellant as the person who sold the informant the cocaine, in addition to describing the circumstances surrounding the exchange.
The final controlled purchase occurred on November 4, 1998. As before, the informant drove to appellant's home near Chagrin Falls Park. When he arrived, the informant asked appellant for an ounce of cocaine. Appellant, however, was unable to immediately fulfill the informant's request, and instead, told him that he could get the drugs tomorrow. Accordingly, there was no exchange of money for drugs on this occasion.
All of the above drug transactions were recorded on audiotapes, which, in turn, were played for the jury during the trial. In addition, most if not all of the informant's testimony was supported by that of several of the investigators who described the procedure used to conduct the controlled purchases and the manner in which the informant and appellant were monitored during the exchanges.
Appellant essentially argues that the jury's verdicts were against the manifest weight of the evidence because the informant was not a reliable witness. According to appellant, the informant testified against him solely in an effort to protect his own interests. Based on this, appellant believes that if the informant's testimony is not considered, there was no evidence to support the convictions.
We disagree. Obviously, the informant's credibility was an issue at trial. However, the credibility of a particular witness is a critical issue for the jury to decide. State v. Burrier (June 16, 2000), Geauga App. No. 98-G-2126, unreported, at 21, 2000 Ohio App. LEXIS 2665. As a result, this court will not disturb those findings on appeal unless the testimony in question was completely lacking in credibility, which in the case at bar, it was not. The fact that the informant was to receive a favorable sentencing recommendation in return for his cooperation was only one factor for the jury to consider when evaluating his credibility as a witness, specifically his ability to recall the drug transactions relevant to this appeal.
Again, after reviewing the record, we conclude that appellant's convictions were supported by the manifest weight of the evidence. Accordingly, his second assignment of error is meritless.
In assignment of error three, appellant contends that he was denied a fair trial because of the alleged cumulative errors that occurred during the course of the proceedings.
In United States v. Hasting (1983), 461 U.S. 499, 508-509, the United States Supreme Court observed that "given the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." See, also, State v. Lott (1990), 51 Ohio St.3d 160, 166. Although a criminal defendant is not entitled to a perfect trial, he is entitled to a fair one. Delaware v. Van Arsdall (1986), 475 U.S. 673,681. See, also, State v. Williams (1988), 38 Ohio St.3d 346, 349. As a result, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner
(1995), 74 Ohio St.3d 49, 64.
First, appellant claims that the trial court erred in failing to instruct the jury on the affirmative defense of entrapment. He claims that such an instruction was warranted because there was ample evidence introduced at trial showing that the criminal design originated with law enforcement officials, and because there was no evidence demonstrating that he was predisposed to commit the crimes.
Appellant admits that he failed to request an entrapment instruction. Accordingly, he has waived all but plain error with respect to the instruction in question. Crim.R. 30(A) provides in pertinent part:
 "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."
 Pursuant to this rule, the failure to object to a jury instruction in a timely manner generally constitutes a waiver of any claimed error relative to the instructions. State v. Holley (Dec. 17, 1999), Ashtabula App. No. 98-A-0089, unreported, at 26, 1999 Ohio App. LEXIS 6101. Under Crim.R. 52(B), however, this court has the power to recognize plain error or defects involving substantial rights even if they are not brought to the attention of the trial court. State v. Moreland (1990), 50 Ohio St.3d 58, 62.
In the context of a criminal case, a court of review should invoke the plain error doctrine with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice. State v.Jenks (1991), 61 Ohio St.3d 259, 282; State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus; Holley at 26. Thus, plain error does not exist unless, but for the error, the outcome of the proceeding would have been different. Jenks at 282; Moreland at 62; Long
at paragraph two of the syllabus; Holley at 26-27.
Generally, "a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged[.]" State v. Adams (1980), 62 Ohio St.2d 151, 153. See, also,State v. Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus (holding that "[a]fter arguments are complete, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder."); State v. Simon (May 26, 2000), Lake App. No. 98-L-134, unreported, at 15, 2000 WL 688728. Stated differently, a "criminal defendant is entitled to have a trial court give complete and accurate jury instructions on all issues raised by the evidence." Statev. Sneed (1992), 63 Ohio St.3d 3, 9.
The decision to issue a particular jury instruction rests within the sound discretion of the trial court. State v. Jones (Mar. 17, 1995), Lake App. No. 94-L-060, unreported, at 3, 1995 Ohio App. LEXIS 971. Accordingly, this court will not reverse a decision concerning the giving of jury instructions absent an abuse of discretion. Jones at 3. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or capricious. State v. Montgomery (1990), 61 Ohio St.3d 410, 413.
To establish the affirmative defense of entrapment, the defendant must prove, by a preponderance of the evidence, that "the criminal design originate[d] with the officials of the government, and they implant[ed] in the mind of an innocent person the disposition to commit the alleged offense and induce[d] its commission in order to prosecute." State v.Doran (1983), 5 Ohio St.3d 187, paragraph one of the syllabus. However, a person who is merely given the opportunity by police to commit an offense is not entrapped. Doran. at 192. Accordingly, "`[w]here there exists credible evidence that one has the "predisposition and criminal design" to commit the acts for which he claims entrapment and he was merely provided the opportunity to commit the act for which he was "apt and willing" the defense of entrapment has not been established.'"Jones at 4, quoting State v. Owens. (Nov. 9, 1990), Lake App. No. 89-L-14-047, unreported, at 5-6.
In the instant matter, the Bainbridge Township Police Department was obviously instrumental in facilitating the transactions between the informant and appellant. Although appellant had the burden to show that the government induced an innocent party to commit a crime, it was the state that presented evidence, through the informant, that appellant had previously sold drugs. More importantly, the written transcripts made from the tape recordings clearly show that appellant was a more than willing participant in the purchases. In fact, during the November 4, 1998 attempt, appellant agreed to sell the informant cocaine even after raising questions about whether the informant was working with the police. This type of conduct is not indicative of an unwilling or otherwise innocent person.
Furthermore, beyond vigorous cross-examination, appellant did not present any testimony on his behalf. Thus, there was no evidence offered to support appellant's allegations that he was enticed by the police to engage in an activity which he was not predisposed to commit. Jones at 4 (holding that "initiating the criminal act by making a request to purchase an illegal substance does not constitute entrapment if the person is prone to carry out the remainder of the act[.]"). As a result, the evidence that was introduced was more than sufficient for the trial court to conclude that appellant was predisposed to commit the crimes of which he was convicted and, thus, was not entrapped by the police.
Next, appellant maintains that the trial court also committed error in allowing the audiotape recordings of the drug transactions to be submitted into evidence.
Evid.R. 1002, also known as the "best evidence rule," states that to prove the content of a tape recording, the original tape must be introduced into evidence. However, "[t]o be admissible, a tape recording must be `authentic, accurate, and trustworthy.'" State v. Coleman
(1999), 85 Ohio St.3d 129, 141, quoting State v. Rogan (1994),94 Ohio App.3d 140, 148. The decision whether or not to admit tape recordings rests within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. State v. Robb
(2000), 88 Ohio St.3d 59, 72; Coleman at 141.
Here, Detective Robert Weir ("Weir"), who was present during the recording of the drug transactions, authenticated the tapes and testified as to their contents before they were played to the jury. Appellant had every opportunity to cross-examine Weir as to what was on the tapes. However, he presented nothing to indicate that the recordings were in any way altered or somehow unreliable. Moreover, the tapes corroborated the testimony presented during appellant's trial. Thus, because the tapes were the "best evidence" of their contents, the trial court did not abuse its discretion in admitting them into evidence.
Appellant also argues that the trial court erred by allowing certain testimony to be admitted during his trial. After reviewing the alleged errors to which appellant refers, we see no useful purpose in setting forth each claim. State v. Wade (1978), 53 Ohio St.2d 182, 187. Most, however, involve the form of witness answers ("long winded" and "rambling"), the form of the questions asked by the prosecutor ("leading"), and to the admission of hearsay testimony.
In any event, appellant has not shown how any of the alleged errors prejudiced his case. As a matter of fact, his attorneys objected to several of the questions as asked, and oftentimes the trial court immediately sustained these objections. Thus, appellant has not demonstrated any prejudice to his defense.
Finally, appellant claims that the trial court made several remarks in the presence of the jury that were harmful to his case. He believes the challenged comments evidenced hostility toward him and his attorney which, in turn, "likely caused the jury to engage in bias in favor of the [state]."
In Ohio, the trial judge is charged with the duty of controlling a criminal trial:
 "The judge of the trial court shall control all proceedings during a criminal trial, and shall limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding the matters in issue." R.C. 2945.03.
 When exercising this duty, a judge must be cognizant of the effect of his or her comments upon the jury. Wade at 187. Thus, it is incumbent upon the judiciary to remain detached and neutral in any proceeding before it. State v. Hardy (Oct. 10, 1997), Portage App. No. 96-P-0129, unreported, at 20, 1997 Ohio App. LEXIS 4588.
"However, this does not mean that a trial judge is precluded from making comments during the course of the trial." Hardy at 20. Instead, when determining whether or not a trial judge's comments were appropriate, a reviewing court must decide whether the remarks were prejudicial to a defendant's right to a fair trial. Wade at 188; Hardy at 20-21. To facilitate this inquiry, the Supreme Court of Ohio has provided the following factors to consider:
 "(1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel." Wade at 188. See, also, Mentor v. Richardson (Dec. 26, 1997), Lake App. No. 96-L-155, unreported, at 6-7, 1997 Ohio App. LEXIS 5853; Hardy at 21.
 Turning now to the specifically challenged comments, the record shows that appellant failed to object to the remarks made by the trial court. Therefore, as we noted earlier, appellant has waived all but plain error with respect to those statements. Crim.R. 30(A).
Appellant takes issue with the following exchanges. First, during the cross-examination of one of the officers involved in the investigation, appellant's attorney asked the officer whether the informant had an Ohio driver's license. The prosecutor objected to the question and the trial court sustained this objection. However, the trial court immediately told appellant's attorney "Don't give me that look, counsel. You'll regret it."
Next, during the cross-examination of another one of the state's witnesses, appellant's attorney asked the officer whether he remembered making a particular statement during direct examination. The prosecutor again objected. The trial court sustained the objection, concluding "[t]hat's not what he said."
Finally, appellant takes issue with the trial court advising Clayton, the DEA agent, "Officer, we've got all day. Slow down."
In the instant matter, we do not believe that the above comments by the trial court rose to the level of plain error. Even if the remarks were inappropriate, appellant has provided us with no evidence that the outcome of his trial would have been different if the trial court had not made the statements.
More importantly, the record shows that before allowing the jury to retire for deliberations, the trial court gave the following curative instruction:
 "If by chance during the course of this trial I said or did anything which you consider an indication of my view of the facts, please disregard that. The Judge must be and it is my desire to be impartial in presiding over this and every other trial whether there is a jury or not. This Court does not have the right nor do I have the desire to invade the province of the jury by indicating in anyway a preference between the state or the defendant. I believe I haven't done so."
 While there may certainly be instances in which this instruction could not have cured the resulting prejudice, that is not the case here. Richardson at 7-8. Accordingly, we conclude that the statements made by the trial court did not amount to plain error because this court does not believe that a reasonable jury would have misunderstood the comments in a manner that would prejudice appellant's right to a fair trial. Wade at 189.
Appellant has failed to demonstrate that any of the above alleged errors, individually or taken together, prejudiced his case, thus denying him a fair trial. As a result, appellant's third assignment of error is not well-taken.
Under his fourth and final assignment of error, appellant argues that he received ineffective assistance of counsel during his trial. He maintains that "the record is replete with instances demonstrating that trial counsel's [sic] performance fell below an objective standard of reasonableness." Appellant believes that the outcome of his trial would certainly have been different "had trial counsel formally requested the entrapment instruction, acted more aggressively in resisting the voluminous gratuitous and hearsay testimony adduced by the state, as well as the physical exhibits." We disagree.
To be successful on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test originally articulated by the United States Supreme Court in Strickland v. Washington (1984),466 U.S. 668, and adopted by the Supreme Court of Ohio in State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. See, also, State v. Sherman (June 25, 1999), Portage App. No. 98-P-0009, unreported, at 7-8, 1999 Ohio App. LEXIS 2940.
First, a defendant must be able to show that his trial counsel was deficient. Bradley at 141. This requires a showing that trial counsel made errors so serious that, in effect, the attorney was not functioning as the "counsel" guaranteed by both the United States and Ohio Constitutions. Id.
Second, a defendant must show that the deficient performance prejudiced his defense. Id. at 142. This requires a showing that there is "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 142. A reviewing court must always remember that "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland at 686.
There is a strong presumption in Ohio that a licensed attorney is competent. State v. Smith (1985), 17 Ohio St.3d 98, 100; Sherman at 8-9. Accordingly, to overcome this presumption, a defendant must show that the actions of his attorney did not fall within a range of reasonable assistance. State v. Smith (Dec. 22, 2000), Portage App. Nos. 99-P-0039 and 99-P-0040, unreported, at 18, 2000 Ohio App. LEXIS 6115.
The simple fact that appellant's attorneys did not object to certain testimony or request a particular instruction is not an error, by itself, so serious that they were not functioning as the counsel guaranteed by the Sixth Amendment to the United States Constitution. Rather, "due to the countless number of ways to provide effective assistance of counsel in a given case, judicial scrutiny of the attorney's performance must be highly deferential." State v. Jones
(Aug. 27, 1999), Ashtabula App. No. 96-A-0009, unreported, at 11, 1999 Ohio App. LEXIS 3979.
With this in mind, and without setting forth every one of appellant's claims, we conclude that the actions of appellant's attorneys in the case at bar can be reasonably described as trial strategy. State v. Phillips
(1995), 74 Ohio St.3d 72, 85 (holding that "debatable trial tactics generally do not constitute a deprivation of effective counsel."). While appellant's attorneys did not object in every instance where an objection would have been appropriate, the record shows that they did make several objections during the course of the trial. Moreover, the record also shows that appellant's attorneys engaged in aggressive cross-examination of state witnesses, further demonstrating that they were competent counsel. Taken in context then, the actions of appellant's attorneys did not fall below the required professional standard of reasonable representation.
Even if they had been ineffective in representing appellant, however, he still failed to provide this court with any evidence that the outcome of the trial would have been different had the alleged errors and omissions not occurred. Appellant's fourth assignment of error is meritless.
Based on the foregoing analysis, the judgment of the trial court is affirmed.
_____________________________________________ JUDGE JUDITH A. CHRISTLEY
O'NEILL, P.J., NADER, J., concur.
[1] The informant had been arrested in Cuyahoga County on unrelated drug charges. He agreed to cooperate in the investigation in exchange for a favorable sentencing recommendation in his own case.
[2] "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). In contrast, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).