OPINION
{¶ 1} David E. Pheanis appeals from his conviction and sentence on two counts of assault on a peace officer.
 {¶ 2} In his sole assignment of error, Pheanis contends the trial court erred in entering a guilty verdict in the absence of unanimous agreement by the jurors.
 {¶ 3} The record reflects that the jurors returned two guilty vericts following several hours of deliberation. After the judge read the signed verdict forms in open court, defense counsel asked for the jurors to be polled. The trial court granted the request and proceeded to question the jurors as follows:
 {¶ 4} JUDGE WARD: "Okay. And we'll start with you Ms. Seabrook[.] [I]s this uh — your verdict on both, uh-is this your verdict on both counts?"
 {¶ 5} MS. SEABROOK: "Yes."
 {¶ 6} JUDGE WARD: "Mr. Schenck?"
 {¶ 7} MR. SCHENCK: "Yes."
 {¶ 8} JUDGE WARD: "Ms. Andrews?"
 {¶ 9} MS. ANDREWS: "What does that mean?"
 {¶ 10} JUDGE WARD: "You're, your signature's on here. Is this in fact your verdict on both counts?"
 {¶ 11} MS. ANDREWS: "Yeah my signature's on there."
 {¶ 12} JUDGE WARD: "Thank you. Ms. Hoover?"
 {¶ 13} The trial court proceeded to poll the remaining jurors, all of whom indicated that the verdict forms reflected their verdicts. Immediately after the trial court polled the last juror, the following exchange occured:
 {¶ 14} JUDGE WARD: "Okay, very good, anything else?"
 {¶ 15} DEFENSE COUNSEL: "Yes, your Honor, the third juror in the back row starting from the left, I'm not sure what her verdict was?"
 {¶ 16} JUDGE WARD: "Uh —"
 {¶ 17} MR. DALY: "May she be asked?"
 {¶ 18} JUDGE WARD: "Uh — that would be Ms. Andrews, uh —"
 {¶ 19} MS. ANDREWS: "Yeah, I signed it."
 {¶ 20} JUDGE WARD: "uh — is your verdict guilty, is your verdict guilty as to both counts?"
 {¶ 21} MS. ANDREWS: "Do I have to answer that?"
 {¶ 22} JUDGE WARD: "Well that was my question, yes you have to answer that."
 {¶ 23} MS. ANDREWS: "Yes, yes and no. I'm still swayed both ways. Yes for some things and no for others."
 {¶ 24} JUDGE WARD: "But you did —"
 {¶ 25} MS. ANDREWS: "The attempt and the knowingly stuff is two different things to me."
 {¶ 26} JUDGE WARD: "But you did sign the uh —"
 {¶ 27} MS. ANDREWS: "Yes I did."
 {¶ 28} JUDGE WARD: "Very good, thank you. Counsel approach."
 {¶ 29} The trial court proceeded to engage in the following side-bar colloquy with defense counsel and the assistant prosecutor:
 {¶ 30} DEFENSE COUNSEL: "Judge, in the past generally, I know judges, different judges, do it differently but judges say `please state your verdict' when the jury are polled and they say `how did you vote' and they say guilty or not guilty. She has not said guilty and I'm not sure that we have a unanimous decision."
 {¶ 31} ASSISTANT PROSECUTOR: "I . . . I've, in twenty years of doing this I've never heard a jury polled to say guilty or not guilty[,] uh — the question is — is this your verdict and we unfortunately are dancing outside our province now because we are not allowed to go behind uh-uh-uh — I think the question simply again is as to count one, was this, is this your verdict. As to count two, was this, is this your verdict. I think that is all we can do."
 {¶ 32} JUDGE WARD: "That's usually all we've got."
 {¶ 33} ASSISTANT PROSECUTOR: "Yep."
 {¶ 34} JUDGE WARD: "Uh — is this your verdict. All us indicated that it is. There's some equivocation here on Ms. Anderews' part uh — that she's uh — signed the verdict uh —"
 {¶ 35} DEFENSE COUNSEL: "But I think she said, she's still swayed on both way[s] and she doesn't know about the `knowingly part' like, is her verdict, guilty or not guilty, I just don't [know] but you can ask."
 {¶ 36} JUDGE WARD: "She signed it, she signed it guilty."
 {¶ 37} DEFENSE COUNSEL: "I know, but she's, she's asked, she's saying no. I don't know."
 {¶ 38} ASSISTANT PROSECUTOR: "Here's the problem."
 {¶ 39} JUDGE WARD: "Yeah, yeah."
 {¶ 40} ASSISTANT PROSECUTOR: "The legal matter ends on the signing of the verdict. If you have `buyer's remorse' afterwards, absent some fraud, we're not allowed to go into it no more from 10 minutes from now. In 10 minutes from now I will be, allowed to go out there and say, Judge, these women said we'll she voted not guilty but she did it just to get along with everybody else, we can't go there."
 {¶ 41} JUDGE WARD: "I'm going to uh —"
 {¶ 42} DEFENSE COUNSEL: "We'll but she signs, you know, she has to know, she has to say, yeah I signed it because in fact he's guilty, I mean, that's the whole thing. It's — it's — it's ya know, uh — she's equivocating on what she even signed."
 {¶ 43} ASSISTANT PROSECUTOR: "After the verdict."
 {¶ 44} DEFENSE COUNSEL: "We'll it's assuming she understood that she signed a verdict that says yes, I'm voting that he's guilty."
 {¶ 45} JUDGE WARD: "We'll I'm going to discharge the jury and uh — send them home and we'll address that issue uh — I don't know what uh — the resolution of this is —"
 {¶ 46} DEFENSE COUNSEL: "We'll I — is this on the record?"
 {¶ 47} JUDGE WARD: "Yes it is."
 {¶ 48} ASSISTANT PROSECUTOR: "Yes."
 {¶ 49} DEFENSE COUNSEL: "I want to make sure that ya know what my request is. Is simply to ask that juror what her verdict i[s]. That's all I'm asking. To ask that juror what her verdict is, either guilty or not guilty. That's all I'm asking for and I think I'm entitled to that."
 {¶ 50} ASSISTANT PROSECUTOR: "We'll and our position is the same Judge. She signed the form, she was asked if this was her verdict, she said yes."
 {¶ 51} DEFENSE COUNSEL: "When?"
 {¶ 52} ASSISTANT PROSECUTOR: "Let me finish."
 {¶ 53} JUDGE WARD: "Is this your verdict and that's pretty clear."
 {¶ 54} ASSISTANT PROSECUTOR: "Yeah. She said yes, that closes one legal door at that point we can't go back behind it, we can't question her, we can't anything, we're stuck."
 {¶ 55} DEFENSE COUNSEL: "But the ambiguity is, is this your verdict, is your verdict guilty or is your verdict not guilty. Is this your verdict? Is what your verdict? Is your verdict guilty or not guilty? Let's just be clear, before the jury is dismissed."
 {¶ 56} JUDGE WARD: "Well, I think it's clear, uh — I, I, she signed the verdict form that says guilty on it."
 {¶ 57} DEFENSE COUNSEL: "But, here's the problem is once we release the jury we're never gonna have this opportunity again to ask her what her verdict is, is it guilty or not guilty?"
 {¶ 58} ASSISTANT PROSECUTOR: "We ask[ed] her that, that's our position."
 {¶ 59} DEFENSE COUNSEL: "Once we do this we're done with it and I'm just asking for that simple, that simple, inquiry, is your verdict guilty or not guilty, that's all I'm asking for and I just want to make sure that my request is clear."
 {¶ 60} After the foregoing discussion, the trial court proceeded to accept the verdict forms, discharge the jury, and deny an oral motion by defense counsel for a mistrial based on the lack of a unanimous verdict.
 {¶ 61} On appeal, Pheanis asserts that the trial court erred in accepting the jury's written verdicts without assuring that the verdicts were unanimous. In light of juror Andrews' expression of uncertainty upon being polled, Pheanis contends the trial court was obligated either to send the jury back for further deliberation or to discharge the jury and declare a mistrial. Pheanis insists that Ohio law did not permit the trial court to accept the written guilty verdicts in the face of Andrews' uncertainty as to his guilt. In response, the State argues that juror Andrews' initial acknowledgment of her signature on the verdict forms adequately demonstrated her assent to the verdicts and closed the matter. The State suggests that her subsequent expression of uncertainty upon further questioning was immaterial because she already had confirmed her signature on the verdict forms. In any event, the State stresses that upon further inquiry by the trial court, Andrews again confirmed that she had, in fact, signed the verdict forms. Thus, the State argues that the trial court did not abuse its discretion in accepting the jury's written verdicts.
 {¶ 62} Upon review, we find Pheanis' argument to be persuasive. Resolution of the issue before us is governed by R.C. § 2945.77 and Crim.R. 31(D). The statute provides:
 {¶ 63} "When the jurors agree upon their verdict, they must be conducted into court by the officer having them in charge.
 {¶ 64} "Before the verdict is accepted, the jury may be polled at the request of either the prosecuting attorney or the defendant. If one of the jurors upon being polled declare[s] that said verdict is not his verdict, the jury must further deliberate upon the case."
 {¶ 65} Similarly, Crim.R. 31(D) states:
 {¶ 66} "When a verdict is returned and before it is accepted the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged."
 {¶ 67} In the present case, the trial court initially polled juror Andrews by stating, "Your signature's on here. Is this in fact your verdict on both counts?" Andrews responded, "Yeah my signature's on there." (Transcript of verdict at 4). Satisfied with that response, the trial court proceeded to poll the other jurors. Immediately thereafter, defense counsel requested additional questioning of Andrews. (Id. at 5). Defense counsel appears to have been troubled by the ambiguity in Andrews' first response. Although she had acknowledged her signature on the verdict forms, she had not indicated whether the forms still represented her verdict on both counts.
 {¶ 68} Upon further questioning by the trial court, Andrews again merely acknowledged that she had signed the verdict forms. (Id. at 5). The trial court then asked Andrews directly, "[I]s your verdict guilty as to both counts?" She replied, "Do I have to answer that?" After the trial court indicated that she did have to answer, Andrews responded, "Yes, yes and no. I'm still swayed both ways. Yes for some things and no forothers. * * * The attempt and the knowingly stuff is two different things to me." (Id. at 5-6) (Emphasis added).
 {¶ 69} At the sidebar conference that followed, the trial court expressed a belief that Andrews' acknowledgment of her signature on the verdict forms was sufficient to demonstrate her assent to the verdicts. (Id. at 6-9). The purpose of polling a jury, however, is not simply to authenticate the signatures on a verdict form. If having each juror confirm the existence of his or her signature on a form were sufficient to satisfy the polling requirement, the procedure would be reduced to a mechanism for uncovering forgeries. But polling serves a different purpose.
 {¶ 70} "Polling a jury under Criminal Rule 31(D) in open court is a separate psychological phenomenon to which separate rights of the accused attach and is a different thing from the signing of the verdict document. That takes place in the secrecy of the jury room. The function of the poll is to determine whether present `in open court' unanimous concurrence still exists notwithstanding and independent of whether or not it had existed in the past at the time of the execution of the verdict document." State v. Rothacher (Feb. 2, 1984), Tuscarawas App. No. CA-1791; see also State v. Sneed (1992), 63 Ohio St.3d 3, 14 n. 5 ("While each juror's vote in the jury room forms the basis of the announced verdict, Crim.R. 31(D) anticipates the possibility that a juror may dissent from the announced verdict when polled. Consequently, `a jury has not reached a valid verdict until deliberations are over, the result is announced in open court, and no dissent by a juror is registered.'").
 {¶ 71} As the Fifth District explained in Rothacher:
 {¶ 72} "[P]olling a jury contemplates the question `Is this your verdict?' and that means NOW, at this very instant and not at sometime in the past when the juror signed the document.
 {¶ 73} "Stated otherwise, the polling of a jury in a criminal case is a `horse of a different color' from closing a real estate transaction or contesting a will. The court is not about the business of validating a previously executed document (the verdict form), but he is engaged in the real emotional phenomenon of guaranteeing to an accused person in a free land that the juror possesses the present firmness of conviction to face him in open court and declare that this is his verdict.
 {¶ 74} "The accused has the right, if polling is invoked, that the juror may change his mind after he has signed the verdict form and back out of his previous written guilty declaration. If he does so upon being polled, the jury verdict document previously signed cannot be accepted notwithstanding it may have been totally free from infirmity prior to polling. * * *
 {¶ 75} "In other words, the legal phenomenon of polling a jury in a criminal case is calculated to disclose whether there exists a present unanimous concurrence. It is not an exercise in validating a previously executed document. It focuses upon the present, not upon that past time when the verdict document was signed.
 {¶ 76} "The two concepts are each important but they are separate and distinct. The point is that notwithstanding that the jury was freely unanimous when the verdict document was individually signed, the rule requires that if unanimous concurrence is not subsequently expressed in open court upon poll, the court has its hands tied and must follow the mandate of [Crim.R. 31(D)]: either to direct the jury to retire for further deliberation or to discharge them. The rule permits nothing else." Rothacher, supra.
 {¶ 77} In the present case, we believe the trial court abused its discretion when it accepted the jury's guilty verdicts based on the fact that juror Andrews had acknowledged her signature on the verdict forms. While confirming her signature, Andrews revealed then-existing doubt about Pheanis' guilt. Under these circumstances, we believe R.C. § 2945.77
and Crim.R. 31(D) obligated the trial court, in the exercise of its discretion, to either direct the jurors to deliberate further or to discharge them and declare a mistrial. State v. Trussell (May 16, 1979), Montgomery App. No. 5927.[1] Accordingly, we sustain Pheanis' sole assignment of error, reverse the trial court's judgment, and remand the cause for further proceedings consistent with this opinion.
 {¶ 78} Judgment reversed and cause remanded.
Fain, J., and Young, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio)
[1] In Trussell, a polled juror acknowledged that she had signed the verdict form but added that "it's not really my verdict." As a result, the trial court in Trussell properly refused to accept the verdict and ordered additional deliberation.