DECISION AND JUDGMENT ENTRY
{¶ 1} Charles Brown appeals from his convictions on charges of domestic violence and unlawful restraint. Appellant argues that the trial court erred in sentencing him to consecutive sentences for domestic violence and unlawful restraint because the two offenses are allied offenses of similar import; thus, constitutional principles prevent cumulative punishments for two offenses arising out of a single occurrence. We hold that the statutory elements of domestic violence and unlawful restraint do not correspond to such a degree that the commission of the first offense will result in the commission of the second offense. As such, they are not allied offenses of similar import. Accordingly, the trial court did not err when it sentenced appellant separately for each offense.
 {¶ 2} In November 2003, appellant and Teresa Brown were involved in an argument and physical altercation. In lieu of a transcript of testimony due to a technical failure, an agreed statement of proceedings was prepared in accordance with Appellate Rule 9(C). The Agreed Statement of Proceedings is reflected in Exhibits "A", "B", and "C".
 {¶ 3} Exhibit A
 {¶ 4} Substantial Points of Testimony of Teresa Brown[2]
 {¶ 5} According to Teresa Brown, appellant broke through the side door of the marital residence. At that time she attempted to go out the door to get in her car and leave but appellant ran after her, grabbed her and dragged her back into the house. She testified appellant asked her to have sex with him, she refused, and got away from him and went to the bathroom.
 {¶ 6} As she was finishing up in the bathroom, appellant entered the room and would not allow her to pull up her shorts. Appellant stated that she [Teresa Brown] was his wife and he knew she wanted to have sex with him. She asked appellant to leave and then began to gather her items for work. She testified that while looking for her shoes, appellant grabbed her arm and twisted it around her back until it popped. Thereafter, she screamed for help while sitting on the floor because of the pain in her arm. Subsequently, appellant came over, grabbed her arm and slapped her in the face telling her to calm down. She got up and sat in a chair and appellant hit her once again in the face. Ms. Brown testified that appellant stated that if she left, "one of us will die," and she then ran to her car and locked the doors. She stated that appellant threatened to slash her tires. Subsequently, she drove away and stopped at a pay phone to call a friend to take her to the hospital.
 {¶ 7} Exhibit B[3]
 {¶ 8} Substantial Points of Testimony of Charles Brown
 {¶ 9} "The Defendant, Charles Brown, did not wish to write a statement on the night of the incident. However, Defendant did receive the Miranda warnings and gave a voluntary statement. Defendant admits going to the marital residence in order to discuss marital problems. The Defendant further testified the [sic] Ms. Brown went to the bathroom and came out with a razor knife raised at him. The Defendant also testified that he did smack Teresa Brown in the face in an attempt to get her to tell him what was wrong and then Teresa Brown left."
 {¶ 10} Exhibit C
 {¶ 11} The court decides the case based upon issues of credibility.
 {¶ 12} "03-CRB-1818B: Defendant is found guilty of domestic violence and sentenced to pay a fine of $250.00, and as further deterrence, 180 days in jail, with 160 days suspended with four (4) years probation. The conditions of probation shall include that Defendant shall pay his fines and court costs, be a law abiding citizen, have no uninvited contact with the victim, and upon receiving any medical bill relating to Teresa Brown's medical expense, Defendant shall pay such amount not covered by insurance through the clerk's office."
 {¶ 13} "03-CRB-1818A: The Defendant is found guilty of unlawful restraint and sentence to pay a fine of $250.00, 60 days in jail, with 60 of those days suspended, to run consecutively with the jail days in the domestic violence case."
 {¶ 14} Also, appellant was sentenced to 180 days on a TPO violation with 170 days suspended. The remaining ten days were to be served consecutive with all other charges.
 {¶ 15} From this sentence appellant appeals and assigns the following assignment of error:
 {¶ 16} I. "The trial court erred by sentencing the defendant separately on both cases where the offenses involved the same conduct and consisted of but one single animus."
 {¶ 17} In his assignment of error, appellant asserts that the trial court erred when it convicted him and sentenced him for both domestic violence and unlawful restraint because these two offenses merge into one. Appellant did not raise the merger issue at trial and has not argued to this court that plain error was committed by the trial court in failing to merge the offenses.
 {¶ 18} Crim.R. 52(B) provides that a plain error in the proceedings that affects substantial rights may be noticed even though it was not brought to the attention of the court. An appellate court that reviews a proceeding for plain error must examine the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error did not occur. State v. Slagle (1992), 65 Ohio St.3d 597,605 N.E.2d 916. The Supreme Court of Ohio has cautioned that "notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. We may invoke the plain error standard of analysis to sua sponte consider the particular errors affecting an accused's substantial rights. State v. Sneed (1992), 63 Ohio St.3d 3, 10,584 N.E.2d 1160, citing Crim.R. 52(B); Long, supra.
 {¶ 19} When reviewing a ruling based on plain error, Crim.R. 52(B) places three limitations on a reviewing court's decision to correct an error notwithstanding the absences of a timely objection at trial. SeeState v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. First, there must be an error, otherwise described as a deviation from a legal rule. Id. See also State v. Hill (2001), 92 Ohio St.3d 191, 200,2001-Ohio-141, 749 N.E.2d 274 (observing that the "first condition to be met in noticing plain error is that there must be error"), citing UnitedStates v. Olano (1993), 507 U.S. 725, 732, 113 S.Ct. 1770, 1776,123 L.Ed.2d 508, 518 (interpreting Crim.R. 52[B]'s identical federal counterpart, Fed.R.Crim.P. 52[b]). Second, the assignable error must be plain, which means an obvious defect in the trial proceedings. Barnes,94 Ohio St.3d at 27; State v. Sanders (2001), 92 Ohio St.3d 245, 257,2001-Ohio-189, 750 N.E.2d 90, citing State v. Keith (1997),79 Ohio St.3d 514, 518, 1997-Ohio-367, 684 N.E.2d 47, See, also, Olano,507 U.S. at 734, 113 S.Ct. at 1777, 123 L.Ed.2d at 519 (a plain error under Fed.R.Crim.P. 52[b] is "`clear' or, equivalently, `obvious'" under current law). Third, the error must have affected substantial rights affecting the outcome of the trial. Barnes, 94 Ohio St.3d at 27; See, e.g., Hill, 92 Ohio St.3d at 205; State v. Moreland (1990),50 Ohio St.3d 58, 62, 552 N.E.2d 894; Long, supra.
 {¶ 20} Appellant argues the convictions of domestic violence and unlawful restraint and the consecutive sentencing violated R.C. 2941.25. R.C. 2941.25 governs our analysis when determining whether two offenses are allied offenses of similar import. See State v. Rance,85 Ohio St.3d 632, 636, 1999-Ohio-291, 710 N.E.2d 699.
 {¶ 21} R.C. 2941.25 requires merger of the separate counts of an indictment for purposes of sentencing as follows:
 {¶ 22} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 23} (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 24} R.C. 2941.25 contains a two-step test that establishes the analysis for determining whether the multiple-count statute prohibits separate punishment for two offenses. The first step is to determine whether the offenses are "allied offenses of similar import" within the meaning of R.C. 2941.25. Two offenses are "allied" if the elements of the crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other.'" Rance, 85 Ohio St.3d at 636, quoting State v. Jones, 78 Ohio St.3d 12, 13, 1997-Ohio-38, 676 N.E.2d 80. If not, the court's inquiry ends. The crimes are considered offenses of dissimilar import and the defendant may be convicted, i.e., found guilty and punished, for both. R.C. 2941.25 (B); Rance, 85 Ohio St.3d at 636. However, if the elements do correspond, the court must proceed to a second step. At that point, the court will review the defendant's conduct to determine if the crimes were committed separately or with a separate animus for each crime; if so, under R.C. 2941.25 (B), the trial court may convict the defendant of both offenses. Id.
 {¶ 25} When undertaking the first step of the analysis, Rance
expressly held that the court must compare the elements of the offenses in the abstract. Rance, 85 Ohio St.3d 632, paragraph one of the syllabus. The court must look at the statutory elements of the involved crimes without considering the particular facts of the case. Id at 636-38.
 {¶ 26} Wellston City Code Section 135.07 addresses unlawful restraint and provides:
 {¶ 27} "(A) No person, without privilege to do so, shall knowingly restrain another of his or her liberty.
 {¶ 28} (B) Whoever violates this section is guilty of unlawful restraint, a misdemeanor of the third degree."
 {¶ 29} Wellston City Code Section 135.16 addresses domestic violence and provides, "No person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 30} Comparing the two offenses sub judice, it is apparent that the elements do not correspond so that the commission of one results in the commission of the other. We find that the offenses of domestic violence and unlawful restraint are not allied offenses of similar import since the elements of the crimes do not "correspond to such a degree that the commission of one crime will result in the commission of the other." The offense of unlawful restraint requires that a person knowingly restrain another of his liberty. The offense of domestic violence requires that a person knowingly cause or attempt to cause physical harm to a family or household member. Clearly, these are separate and distinct elements. The commission of one crime does not result in the commission of the other. Thus, because each offense requires proof of an element that the other does not, they are not allied offenses of similar import. The two offenses are of dissimilar import as appellant could be convicted of both domestic violence and unlawful restraint.
 {¶ 31} For the foregoing reasons, we find the trial court did not commit plain error. Accordingly, we overrule appellant's assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, P.J.: Concurs in Judgment Only Kline, J.: Concurs in Judgment and Opinion.
[2] Teresa Brown's statement verbatim was: "Came home from work took a shower washed my work cloths Dave knocked on the door He wanted to come in and I said No I want to get some rest I have to work in the morning (He had been staying at his mom's house since Monday) He went around the house and broke through the side door I tryed to go out the other door to get to my car and leave But he ran after me and grabed my arms and dragged me back into the house, I asked him to leave me alone and go back to his moms. and he through me down on the couch. and asked me to have sex with him. and I told him No I didn't want to be around him. I finily got away from him and went to the bathroom. Before I was done he busted through the bathroom door he would not let me pull up my shorts He kept pulling them back down. yelling at me that I was his wife and your nothing but a liar you know want to have sex with me. I told him I didn't I didn't want you around me I asked him to leave again I started gathering my stuff up for work I had my cig. Lighter, and my box cutter in my hands I was looken for my shoes when he grabed my arm and twisted it all the way around to my back and I heard it pop 2 time and it hurt so bad. I was screaming for someone to help me Hoping one of the neighbor could hear me I sat down on the floor cause my arm hurt so bad he came over and grabed my arm I screamed cause it hurt and he slaped me in the face and told me to calm down I got up and sat in the chair he hit me in the face and told me to quit treating me so bad and I just wanted to leave so he would not hurt me no more. He said if I leave then one of us will die then I ran to my car and locked the door. He came out their and threatened to slash my tires. I just left and stop at a pay phone to call a friend to take me to the hospital."
[3] The trial court's order of June 1, 2004, did not contain a copy of Exhibit B, however, it referenced it and was included in defendant's motion on April 23, 2004. Plaintiff agreed to the statement of facts in their motion on May 17, 2004.