OPINION
{¶ 1} Defendant-appellant, Richard D. Wiseman, appeals his conviction in the Warren County Court of Common Pleas for felonious assault in violation of R.C. 2903.11(A)(2). We affirm.
 {¶ 2} On the evening of January 11, 2004, appellant was involved in a domestic dispute in his Springboro, Ohio home where he lived with his father, Richard F. Wiseman. His father was siting and watching television that evening in the living room when appellant and his girlfriend, Tina Watkins, arrived at the residence.
 {¶ 3} Appellant and Watkins were having a heated argument. Appellant entered the kitchen while Watkins stayed in the living room with appellant's father. The father attempted to intercede. Appellant then exited the kitchen with an 8-10 inch butcher knife. The father testified that appellant's eyes appeared "glazed over" and full of "pure anger" as appellant approached, knife raised above his head with its blade pointing forward. Appellant said, "I'm going to kill you." The father quickly arose from his chair and stood in front of Watkins.
 {¶ 4} Appellant repeated, "I'm going to kill you," pushed his father to the wall, and locked the front door of the house. There was conflicting testimony about whether the father made an attempt to disarm appellant. Appellant tapped the knife on his chest and told his father someone was going to get hurt. Appellant's father moved towards the telephone, but appellant had unplugged it. Appellant threatened his father, "If you pick up that phone, I'll kill you." The father was able to move away and exited the house through the back door. Outside, he sought help from his neighbor, but his neighbor was not home. When the father re-entered the house, appellant and Watkins continued to argue because appellant would not return Watkins' keys. The father asked appellant to give her the keys. Appellant responded by throwing the keys out the front door into the street and leaving the house. Watkins and the father went out to find the keys. After finding them, she drove home. The two called the police separately, and appellant was later apprehended at an apartment located two blocks away.
 {¶ 5} On February 9, 2004, appellant was indicted on one count of felonious assault, a second-degree felony, in violation of R.C.2903.11(A)(2), and domestic violence, a first-degree misdemeanor, in violation of R.C. 2919.25(A). Appellant moved to suppress his statements given to police after his arrest. The trial court denied the motion, and a jury trial was held on June 7 and 8, 2004. Appellant was found guilty on both counts. The court dismissed the domestic violence count pursuant to R.C. 2941.25(A) and imposed a two-year prison term for the felonious assault offense. Appellant now appeals his conviction raising three assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "The trial court erred in overruling the appellant's motion to suppress."
 {¶ 8} In appellant's first assignment of error, he argues that his statement to police that he retrieved a knife and held it to himself should have been suppressed because he was not advised of his rights as described by Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602. We disagree.
 {¶ 9} Appellate review of a ruling on a motion to suppress presents mixed questions of law and fact. State v. Long (1998),127 Ohio App.3d 328, 332. When considering a motion to suppress, the trial court assumes the role of the trier of fact and therefore is in the best position to resolve factual questions and evaluate the credibility of witnesses. An appellate court must defer to the trial court's factual findings if they are supported by competent, credible evidence. State v.Retherford (1994), 93 Ohio App.3d 586, 592. Accepting the trial court's factual findings, the appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 10} Appellant contends that Miranda requires four bright-line warnings must be provided to a criminal suspect prior to custodial interrogation: the right to remain silent; that anything he says can be used against him in a court of law; that he has the right to the presence of an attorney; and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. See Miranda,384 U.S. at 479. However, the Supreme Court has never required the talismanic incantation of the precise language contained in the Miranda
decision. See California v. Prysock (1981), 453 U.S. 355, 359,101 S.Ct. 2806; Duckworth v. Eagan (1989), 492 U.S. 195, 202-203,109 S.Ct. 2875. The warnings are simply required to convey to a suspect his rights and are not themselves rights protected by the Constitution.Duckworth at 203. They are measures to protect one's right against compulsory self-incrimination. Id. at 202.
 {¶ 11} During appellant's motion to suppress hearing, Officer Anderkin provided the following testimony detailing the circumstances of appellant's arrest:
 {¶ 12} "I advised him he had the right to remain silent, anything he said could be used against him in a court of law, you have the right to have a [sic] attorney present and he advised that he did."
 {¶ 13} Even though appellant was not told that he could have an appointed attorney, the warnings given did not violate appellant's right against compulsory self-incrimination to warrant suppression of his statements. The underlying purpose of Miranda is not the form of the recitation but rather the substance for which such recitation is necessary. The import of explaining that an indigent has the right to have an attorney appointed is that without such warning, "the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one." Miranda, 384 U.S. at 473.
 {¶ 14} The Court, in explaining the preferred simplicity of the warning relative to ex post facto inquiries into financial ability, stated "a warning that the indigent may have counsel appointed need not be given to the person who is known to have an attorney or is known to have ample funds to secure one * * *." Id. at fn. 43. Thus, when appellant responded that he had an attorney, the warning that he had a right to have counsel appointed became unnecessary in this scenario. The trial court did not err when it found that appellant received theMiranda warnings to which he was entitled and subsequently denied his motion to suppress. Appellant's first assignment of error is overruled.
 {¶ 15} Assignment of Error No. 2:
 {¶ 16} "The trial court erred in not instructing the jury on the full law of `attempts.'"
 {¶ 17} Appellant's second assignment of error alleges the trial court erred when it did not give his proposed jury instructions. Any party may propose jury instructions. Crim.R. 30. If the proposed instruction for the jury is correct, pertinent and timely presented, the trial court must include it, at least in substance, in the general charge. State v.Guster (1981), 66 Ohio St.2d 266, 269, citing Cincinnati v. Epperson
(1969), 20 Ohio St.2d 59, paragraph one of the syllabus. However, the trial court is not required to give a proposed jury instruction verbatim. The court may use its own language to communicate the same legal principles. State v. Sneed (1992), 63 Ohio St.3d 3, 9.
 {¶ 18} When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the instruction constituted an abuse of discretion under the facts and circumstances of the case. State v. Wolons (1989), 44 Ohio St.3d 64, 68. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 19} In the case at bar, the trial court gave appellant's jury instruction that "the act of pointing a deadly weapon at another without additional evidence regarding the actor's intention is insufficient to convict a defendant of the offense of felonious assault." This instruction is derived from the syllabus of State v. Brooks (1989),44 Ohio St.3d 185. The court provided further instruction, explaining that "the act of pointing a deadly weapon at another, coupled with a threat which indicates an intent to the use the weapon, is sufficient evidence to convict a defendant of the offense of felonious assault." This explanation comes from the Ohio Supreme Court's decision in Statev. Green (1991), 58 Ohio St.3d 239, syllabus. The trial court also provided the definition of "criminal attempt" from 4 Ohio Jury Instructions (2003) 627, Section 523.03(3), and State v. Woods (1976),48 Ohio St.2d 127, paragraph one of the syllabus, as follows:
 {¶ 20} "A `criminal attempt' is when one purposely does or fails to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in the commission of a crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose."
 {¶ 21} Appellant argues, however, that he was entitled to further instructions that the display of a knife, coupled with a verbal threat and nothing other than what appellant alleged to be mere preparation, does not constitute felonious assault.[1] In submitting the proposed instructions, appellant cited the Ninth District's decision in State v.Smith (Jan. 26, 2000), Lorain App. No. 98CA007168, where a majority of the appellate court held that what constitutes a substantial step in the commission of felonious assault with a knife differs from what constitutes a substantial step in the commission of felonious assault with a gun. The court found that the act of pointing a knife alone, or even when accompanied by verbal threats, was insufficient evidence to convict the defendant of felonious assault.
 {¶ 22} Without expressing approval of the Ninth District's decision inSmith, we find that the trial court did not err when it gave the aforementioned jury instructions because the court's language communicated the same legal principles of appellant's proposed instructions. Appellant's proposed language regarding an overt act that makes his intention to commit physical harm unequivocal is similar to the trial court's instruction defining substantial step, specifically that "the conduct must be strongly corroborative of the actor's criminal purpose."
 {¶ 23} Furthermore, the evidence showed appellant's conduct consisted of several acts beyond the mere display of the knife and verbal threats. In Smith, the court found there was insufficient evidence to support a felonious assault conviction when the defendant was "flailing" a Swiss army pocket knife around and did nothing more than continue a verbal tirade towards the alleged victim. The court found that the defendant "was not holding the knife in a manner that would permit him to carry out his stated intentions." In the case at bar, appellant raised the butcher knife above his head and directly pointed it toward his father. Appellant threatened to kill him multiple times, pushed him aside, and locked the front door, controlling his father's movements. Accordingly, we find the trial court's jury instructions were proper. Appellant's second assignment of error is overruled.
 {¶ 24} Assignment of Error No. 3:
 {¶ 25} "The trial court erred in convicting the defendant of felonious assault."
 {¶ 26} Appellant's final assignment of error argues that there was insufficient evidence to support his conviction. He also contends that the conviction was against the manifest weight of the evidence. We disagree with both arguments.
 {¶ 27} The test by which an appellate court reviews a sufficiency of the evidence claim is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 28} R.C. 2903.11(A)(2) defines felonious assault, in pertinent part, as follows:
 {¶ 29} "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 30} "Attempt" for purposes of R.C. 2903.11 is defined in R.C.2923.02(A) as follows:
 {¶ 31} "No person, purposely or knowingly, and when purpose of knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 32} As mentioned earlier, the Ohio Supreme Court construed 2923.02(A) in State v. Woods, 48 Ohio St.2d at paragraph one of the syllabus, stating a "criminal attempt" is where one "purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose."
 {¶ 33} Appellant specifically challenges whether the state demonstrated that he "attempted to cause" physical harm. Again citingState v. Smith from the Ninth District, appellant maintains that the act of pointing the knife at his father does not constitute a substantial step in furtherance of the assault because there was allegedly no intent to carry out his threat. However, Smith is not binding precedent upon this court.
 {¶ 34} As discussed earlier, the supreme court held in State v.Brooks that the act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, was insufficient to convict a defendant of the offense of felonious assault. Brooks,
44 Ohio St.3d at syllabus. In Brooks, the defendant was involved in a volatile argument with a barmaid. The defendant suddenly drew a revolver, threatened to kill her, and left the premises only after hearing that the bar's manager had called the police. The defendant's acts beyond the pointing of the deadly weapon were strongly corroborative of his intent to cause physical harm with such weapon. The court found that such conduct constituted a substantial step and was sufficient evidence upon which the jury could conclude the defendant had committed the offense of felonious assault. Id. at 192.
 {¶ 35} In State v. Green, the supreme court further expounded uponBrooks stating that "the additional evidence needed to uphold a felonious assault charge could include verbal threats as perceived by a reasonable person under the circumstances." State v. Green, 58 Ohio St.3d at 241. InGreen, the defendant held a loaded, fully functional rifle with its hammer cocked at a patrolman's head and threatened him. The supreme court found that this conduct was strongly corroborative of his intent to cause physical harm to the officers and thus sufficient evidence to convict the defendant of felonious assault.
 {¶ 36} In the case at bar, there was sufficient evidence that appellant's conduct constituted a substantial step in furtherance of the assault. While in a heated discussion with Watkins, appellant went into the kitchen and obtained the butcher's knife. Appellant exited the kitchen with the knife raised over his head with the blade pointing forward, a preparatory striking position. Several times he threatened to kill his father. Appellant disconnected the telephone, pushed his father against the wall, and locked the front door of the house. This conduct is strongly corroborative of appellant's criminal intent to cause physical harm by means of a deadly weapon. We find there was sufficient evidence to support appellant's felonious assault conviction.
 {¶ 37} In determining whether appellant's conviction was against the manifest weight of the evidence, an appellate court must weigh the evidence and all reasonable inferences from it, consider the credibility of the witnesses and determine whether in resolving conflicts, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Statev. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. This discretionary power should be exercised only in the exceptional case where the evidence weighs heavily against conviction. Id.
 {¶ 38} An appellate court will not reverse a judgment as being against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony.Thompkins at 389. When reviewing the evidence, an appellate court must be mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 39} After reviewing the record and for the reasons described above, we cannot say that the jury lost its way when it found appellant was guilty of felonious assault. The conviction was not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.
 {¶ 40} Judgment affirmed.
Young and Bressler, JJ., concur.
[1] {¶ a} Appellant's proposed jury instructions consist of the following:
{¶ b} "Pointing a knife at an individual is different from pointing a gun, even though both may be deadly weapons. Pointing a knife at someone can be only one of several steps preparatory to using it to injure another, rather than the penultimate one. That act alone, or even when accompanied by verbal threats, is equivocal as to whether the Richard D. Wiseman was trying to harm his father, Richard F. Wiseman, or merely intending to frighten him.
{¶ c} "In order to find Richard D. Wiseman guilty of felonious assault, his father, Richard F. Wiseman must have actually been harmed, or Richard D. Wiseman must have overtly acted in a manner that made his intention to carry out his expressed threat to harm Richard F. Wiseman unequivocal. Absent either of the foregoing, Richard D. Wiseman's actions were merely preparatory and not felonious assault.
{¶ d} "In order to establish a knowing attempt to cause physical harm, the State is required to demonstrate that Richard D. Wiseman had the criminal intent to harm Richard F. Wiseman, and that the conduct of Richard D. Wiseman represented a substantial step in carrying out that intent. There must have been some overt act directed toward physical harm which was beyond behavior that merely causes another to believe physical harm is imminent."